Michael CURRID, Appellee,

v.

The MEETING HOUSE RESTAU-
RANT, INC., and Gilfred L.
Spradlin.

Appeal of: Gilfred L. Spradlin.

Superior Court of Pennsylvania.

Argued Oct. 27, 2004.
Filed Feb. 16, 2005.

Gilfred L. Spradlin, appellant, Pro Se.

Michael P. Dennehy, Danville, for appellee.

BEFORE: STEVENS, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Gilfred L. Spradlin appeals, *pro se*, from the April 15, 2004, $25,875.92 judgment entered in favor of the plaintiff, Michael Currid following a nonjury trial, the underlying lawsuit arising out of a 1999 agreement to purchase a liquor license. The award to appellee included $16,000 for "business consulting services," $5,434.52 interest, and $4,286.90 attorneys' fees.

¶ 2 Resolution of this appeal requires a detailed explanation of the three related cases resolved in the trial court. This procedural morass began July 31, 1999, when the parties entered into an agreement for the sale of a liquor license. The contract for the sale indicated that for the price of $10,000, with $5,000 down, appellee would sell his license to appellant, said license to be used in connection with appellant's restaurant, The Meeting House Restaurant, Inc.[1] A promissory note also was executed, obliging appellant to pay appellee $16,000, in four installments, for "business consulting services" offered by appellee. On January 18, 2000, the parties signed an agreement amending the July 31, 1999 agreement, extending the closing date for transfer of the liquor license, and agreeing that at closing, the additional non-refundable $5,000 would be tendered.

¶ 3 Transfer of the license was approved April 20, 2000, and on July 17, 2000, the parties entered yet another agreement reiterating the terms of the July 31, 1999 agreement "whereby Seller would sell to Buyer the license for the consideration of $10,000.00," and "dictating the terms of the closing, including the statement that the $5,000 balance would be paid and that all funds are non-refundable." Record, No. 6, Complaint, Plaintiff's Exhibit 5. This now completes the transfer as set forth in the agreement of July 31, 1999. *Id.* On this same date, July 17, 2000, appellant tendered the second $5,000 payment to appellee, as "final payment for liquor license." Appellee refused this tender, however, arguing that the balance owed was $21,000, said amount reflecting the $5,000 balance plus $16,000 from the note. On August 1, 2000, appellee provided appellant with a "cancellation of agreement" notifying him that the sale was null and void due to appellant's failure to fulfill his financial obligations. By letter dated October 27, 2000, appellee notified appellant he must pay the balance of what he believed to be the total agreed upon price, or $22,269.89, by November 3, 2000, or an action in equity to force transfer of the liquor license would be commenced. Appellant did not comply with this request, and a lawsuit, the first of three, was commenced (No. 544 of 2000), the issue being "whether the agreed upon price for the sale and purchase of the liquor license [was] $10,000 or $26,000." Trial Court Opinion, James, Jr., J., 6/26/02, at 5.

¶ 4 The trial court found the sale price of the liquor license to be $10,000 and reasoned as follows:

---

1. By Order of this Court dated July 8, 2004, The Meeting House Restaurant, Inc., owned by appellant, was dismissed as a party to this appeal for failure to be represented by legal counsel. *See Walacavage v. Excell 2000, Inc.,* 331 Pa.Super. 137, 480 A.2d 281 (1984). Appellee's motion to strike appellant's brief, however, was denied October 4, 2004.

[Appellee] has not proven that there is a mistake by clear and convincing evidence. He submits that it was his clear understanding that he was to receive $26,000 for the liquor license and that the transaction was structured to allow [appellant] to purchase the license with leverage because of his cash flow problems. There are several problems with that argument. First, the agreement explicitly states that the price of liquor license is $10,000.00. *Second, the note explicitly states that the leveraged amount $16,000.00 is for "business consulting services."* Third, in over a year, there was never any document or conversation referring to a price of the liquor license other than $10,000.00 until [appellant] tendered the second $5,000.00. Fourth, [appellee] himself prepared the agreement and the note. It is a principle of law that if there is a dispute in a document, it should be construed against the scrivener.

*Id.* at 7 (emphasis added). By Order of June 26, 2002, the court directed the parties to complete the transfer of the liquor license for the price of $10,000, and appellant was directed to pay the additional $5,000 owed by October 15, 2002. No appeal was filed.

¶ 5 In 2002, two companion cases were filed in the Court of Common Pleas by appellee. At No. 515 of 2002, appellee filed an action in equity seeking to void or rescind the contract for the sale of the liquor license, apparently on the basis appellant had failed to tender the additional $5,000 as directed.[2] Appellant argued he was not obligated to pay the additional $5,000 as ordered by the court because appellee's July 17, 2002 "refusal of tender" acted as a waiver of any right he may have had to the balance. On June 2, 2003,

however, the court entered an Order rescinding the contract to sell the liquor license, thereby returning it to appellee, and allowing appellee to keep the $5,000 down payment. An appeal was filed in this Court (1674 MDA 2003), but it was dismissed on February 10, 2004 for failure of counsel to enter an appearance for the corporate appellant, the restaurant. *See Walacavage v. Excell 2000, Inc.,* 331 Pa.Super. 137, 480 A.2d 281 (1984). On November 16, 2004, appellant's petition for allowance of appeal was denied.

¶ 6 At No. 516 of 2002, the third of the underlying lawsuits and the case presently before this Court, appellee sued appellant for breach of contract with regard to the $16,000 promissory note for business consulting services executed simultaneously with the agreement for sale of the liquor license. In response, appellant argued there was no consideration for the note, as appellee never gave him any advice. Ruling in appellee's favor, the trial court found

> there was at least a bit of advice given and, thus, sufficient consideration, even if it is only a "peppercorn." However, this court also finds that the consideration provided by [appellee] in facilitating the [liquor license] contract was significant additional consideration for the note.

Trial Court Opinion, James, Jr., J., 1/22/04 at 2–3. In so finding, the court awarded appellee the $16,000 plus interest and attorneys' fees, for a total of $25,875.92. Judgment was entered, post-trial motions were denied, and this appeal followed.

¶ 7 Our standard and scope of review when considering a challenge to the trial court's ruling on a contract issue follow:

---

**2.** While that complaint is not available for our review, in its Opinion granting plaintiff/appel-

lee relief, the court discusses non-payment by appellant.

The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Abbott v. Schnader, Harrison, Segal & Lewis,* 805 A.2d 547, 553 (Pa.Super.2002) (citations and quotations omitted), appeal denied, 573 Pa. 708, 827 A.2d 1200 (2003). Parol evidence may be introduced to vary the contents of the writing when the terms of the contract are ambiguous or fraud, accident or mistake is alleged. *West Conshohocken Restaurant Associates, Inc. v. Flanigan,* 737 A.2d 1245 (Pa.Super.1999), *appeal denied,* 563 Pa. 619, 757 A.2d 934 (2000).

¶ 8 *Pro se* appellant raises two issues for our consideration:

When one party to an agreement testifies that he had no intention of providing any services, which said services are the consideration bargained for, the contract is voidable and the agreement is fraud on its face.

Appellant's brief at i. In support of this first argument appellant cites the trial testimony from the June 25, 2002 hearing held in conjunction with the first case of the trilogy, case No. 544 of 2000, addressing the issue of whether the price of the liquor license was $10,000 or $26,000, the latter price reflecting the $10,000 sale

price plus the $16,000 note. Appellee testified on direct examination that the price was to be $26,000 total, and that he agreed to divide payment into $10,000 for the license and $16,000 for "business consulting services" in order to ease appellant's approval from the LCB, given appellant's cash flow problems. N.T., 6/25/02 at 9–11. Appellee was adamant that he had no intention of providing business consulting services, as "I have no expertise in the area." *Id.* at 10. The payments were divided as agreed ($10,000 and $16,000) only "to facilitate the deal". *Id.* at 11.

¶ 9 In his second issue, appellant argues

[t]he Trial Court, in it's Opinion, Finding of Facts, Discussion and Order in a previous and related case [No. 544 of 2000], containing the same parties and essentially the same subject matter in part as the instant case, erred by making it's [sic] ruling inconsistent with and in-opposite [sic] to the Trial Courts [sic] ruling in that previous case.

Appellant's brief at i. In support of this argument that the trial court's holding is at odds with a prior decision by that same court, appellant also references the court's Opinion filed at No. 544 of 2000, wherein the trial court concluded both the sales agreement for the liquor license and the note were unambiguous and must be construed as apparent on their face. The Opinion did not discuss the $16,000 contract for consultation, only noted that the note explicitly states that the leveraged $16,000 is for "business consulting services." Trial Court Opinion, James, Jr., J., 6/26/02 at 7.

¶ 10 Given the fact that appellant's two issues are inextricably intertwined, we will address the arguments as one. We agree there is inconsistency in the trial court Opinions as to whether the documents under discussion, the sales agreement and the note, are separate documents to be

analyzed individually, or are part of one business transaction. *See* Trial Court Opinions, 6/26/02 (No. 544 of 2000) and 1/22/04 (No. 516 of 2002). Either way, we find that to allow the judgment in favor of appellee to stand would provide him with a $30,875.92 windfall, in addition to ownership of the liquor license restored to his possession by the trial court at case No. 515 of 2002. In our discussion, we will address both trial court stands.

■ ¶ 11 If we look at the sales agreement and promissory note as the trial court does in No. 516 of 2002, as part of *one* transaction, that being a single agreement to *facilitate* the transfer of the liquor license, the $16,000 note must be found, contrary to the trial court's Opinion at No. 544 of 2000, to represent part of the sale price of the license. If we accept the trial court's position that the two documents are part of one larger transaction, that being the transfer of the liquor license, the court's attempt to award appellee money for defaulting on the $16,000 note is barred by the fact that the liquor license contract was rescinded on an equitable basis by the trial court's June 2, 2003 Order entered at case No. 515 of 2002.[3] Further, if we construe the sales agreement and note as part of a single transaction, and the transfer/sale has been rescinded, the associated note necessarily is of no value.[4] *See Raw v. Lehnert,* 238 Pa.Super. 324, 357 A.2d 574 (1976) (holding one may not terminate contractual obligations and seek the return of his consideration based upon the other party's promise through an action for re-scission and restitution, and, at the same time, seek the full benefits of that promise through an action for breach).

■ ¶ 12 At first blush, if we look within the four corners of the unambiguous promissory note independently, without concern for the liquor license sales agreement, as initially was done by the trial court in case No. 544 of 2000, we find there was to be consideration for the $16,000 promissory note in the form of business consulting services provided by appellee. That interpretation, however, is belied by the record wherein appellee states repeatedly he gave appellant *no* advice. Considering the written note, together with appellee's testimony, it is readily apparent there was no consideration provided by appellee in exchange for the $16,000 to be paid by appellant. No support for the judgment entered in favor of appellee exists. In so finding, the reasoning by the court issued in No. 544 of 2000 became precedential.

¶ 13 While the trial court found appellee provided a "peppercorn" of consideration for the note, in the form of "bits of advice" provided *before* the note was signed, we find no such consideration on the part of the appellee. The exchange on which the trial court relies is detailed as follows: In response to questions posed to appellee by appellant on cross-examination, concerning whether appellee "[had] any intentions at the inception of this promissory note to provide any business consulting services," appellee repeatedly answered in the negative, explaining,

A: The answer was[,] certainly on a professional basis[,] I was not—I have

---

3. As a point of fact, if the contract between the parties equitably was *rescinded,* and there was no evidence of fraud, the trial court erred by allowing appellee to keep the $5,000 down payment, as the very essence of the remedy of rescission is to return the parties to the status *quo ante,* that is, to put them in the position in which they would have been had the contract never been consummated.

4. The liquor license's relationship to the note is evidenced by the note's payment schedule indicating that interest would not begin to accrue until transfer of the license was completed.

no expertise in the hotel business or in the restaurant business. My expertise would be marketing management/international training. In so far as *bits of advice that I gave you*, off the record advice, they would not have been what I consider a professional package.

Q: The answer is no?

A: I have to tell the truth and that's the way I see it.

N.T., 7/28/03 at 18. (emphasis added).[5] Finding consideration based on this offhanded, nebulous statement by appellee is irrational. Even if we were to stretch the bounds of our imagination and agree with the trial court that appellee provided a modicum of advice to appellant prior to the execution of the note, we find that in this situation, the common law maxim, "past consideration is no consideration" equitably must hold true. John. E. Murray, Jr., *Murray on Contracts*, § 67(A)(1) (3rd Ed.1990). Lastly, the court's position that appellee's "willingness to facilitate the agreement" somehow acts as consideration for the $16,000 promissory note is unacceptable in light of the fact that the court previously held "[w]ithin the four corners of this agreement, there is no ambiguity. There is no clear and convincing evidence of a mistake. There is simply no basis to modify this contract." Trial Court Opinion, 6/26/02, at 8.

¶ 14 The promissory note at issue provided that in exchange for "business consulting services," appellant would pay appellee, in four installments, a total of $16,000, plus interest and, in the event of default, attorneys' fees. Examining the note on its face, without extrinsic evidence or testimony, and independent of the sales agreement, the instrument unequivocally states the $16,000 was payable in exchange for "business consulting services," and according to appellee's own testimony, offered on multiple occasions, he *never intended* to provide such services and, in fact, *none was provided*. Looking within the four corners of the note, and considering the evidence offered, it is clear appellee had no intention to, nor did he provide, the "business consulting services" for which appellant contracted to pay and served as consideration for the contract. Appellee cannot now collect the $16,000 contract amount plus interest and fees.

¶ 15 Having reviewed the parties' brief and the record in its entirety, we find the trial court erred by awarding appellee judgment in the amount of $25,875.92. As stated above in *Abbott*, "this Court must construe the contract only as written and *may not modify the plain meaning under the guise of interpretation*." (emphasis added). For the reasons set forth above, we therefore vacate the judgment entered April 15, 2004.

¶ 16 Judgment vacated.

¶ 17 Jurisdiction relinquished.

---

**5.** That testimony is consistent with appellee's testimony throughout the proceedings, including the July 28, 2003 hearing relative to the $16,000 promissory note presently under consideration. Appellant asked appellee what his intentions were at the time the contract was formed, and appellee testified on cross-examination that he had no intention at the time the parties entered the contract to provide consultation services.

Appellant: Under direct examination and cross examination your testimony was consistent. And the question was, "When you entered into this document was there any intention [on] your part to provide business consulting services at all?"

And your answer was, "Absolutely none."

And that is consistent with your testimony today, is that correct?

Appellee: That is correct.

N.T., 7/28/03 at 19.