Herbert J. NEVYAS, M.D., Anita Nevyas–Wallace, M.D., and Nevyas Eye Associates, P.C., Appellees

v.

Dominic MORGAN and Steven Friedman.

**Appeal of Dominic Morgan.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2006.
Filed March 9, 2007.

Paul A. Levy, Washington, D.C. and Carl H. Hanzelik, Philadelphia, for appellant.

Allison Lapat, Philadelphia, for Nevyas–Wallace and Nevyas Eye Associates, appellees.

BEFORE: STEVENS, PANELLA, and JOHNSON, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Dominic Morgan, appeals from the order entered on October 19, 2005, in the Court of Common Pleas of Philadelphia, which granted an injunction in favor of Appellees, Herbert Nevyas, M.D., Anita Nevyas–Wallace, M.D., and Nevyas Eye Associates, P.C. (collectively the "Nevyases"). After careful review, we vacate the order and remand for proceedings consistent with this Opinion.

¶ 2 In April of 1998, Morgan underwent LASIK [1] eye surgery. Anita Nevyas–Wallace, M.D., performed the procedure and her father, Herbert J. Nevyas, M.D., assisted. After the procedure, Morgan was left legally blind.

¶ 3 In April of 2000, Morgan, represented by Steven Friedman, Esquire, instituted a medical malpractice action against the Nevyases and their professional practice, Nevyas Eye Associates, P.C.

¶ 4 Thereafter, in 2002, in an effort to warn others of the possible dangers of LASIK eye surgery, Morgan created a website with the domain name "www. lasiksucks4u.com." On his website, Morgan, among other things, documented his LASIK experience. Morgan also included statements about the Nevyases on his website that were critical of their skills and expertise. For instance, Morgan wrote that the Nevyases are "ruthless, uncaring and greedy" people and that they "ruined" his life. N.T., 7/26/05, at 6. Morgan also wrote that the Nevyases failed to fully inform him of the risks associated with the procedure and included several defamatory statements.

¶ 5 In June 2003, Morgan's medical malpractice action proceeded to arbitration where the parties entered into a high/low agreement. The arbitrator ruled against Morgan; therefore, the Nevyases paid Morgan the "low" amount of $100,000.00.[2]

¶ 6 In 2003, the Nevyases learned of Morgan's website and their attorney, Leon W. Silverman, Esquire, sent, on July 30, 2003, Morgan a cease and desist letter. The letter informed Morgan that if he failed to take the comments concerning the Nevyases off the website they would seek injunctive relief from the court. The Nevyases' counsel also sent a letter to Yahoo! Inc., the company that hosted Morgan's website.

¶ 7 Morgan interpreted the letter to mean that the Nevyases wanted his website shut down. Furthermore, he "felt threatened," but was not "about to give up [his] right[ ][of] free speech." Id., at 68. Morgan wrote to Attorney Silverman on August 1, 2003, noting that he "conformed to your request insofar as to remove any stated libelous reference to the Nevyas and their practice only[.]" Id. Morgan further wrote in the letter that he would

> not remove the website in its entirety and will be updating this site or others with facts of my care, treatment, history, all of the legal issues pertaining to my case and all necessary documentation substantiating those facts within the legal guidelines as allowed by the law and the First Amendment which grants me freedom of speech[.]

Id., at 68–69. Thereafter, Morgan edited the content of his website to "accommodate" the Nevyases demands so that he "could not get sued." Id., at 69. Despite the changes Morgan made to the website, Yahoo!, at the Nevyases' counsel's behest, shut the website down on August 7, 2003, which prompted Morgan to switch to another internet service provider to host his website. Subsequent thereto, Morgan put his website, "www.lasiksucks4u.com," back online and the site contained references about the Nevyases.

---

1. "LASIK stands for Laser–Assisted *In Situ* Keratomileusis and is a procedure that permanently changes the shape of the cornea, the clear covering of the front of the eye, using an excimer laser." U.S. Food and Drug Administration, Learning about LASIK, available at http://www.fda.gov/cdrh/LASIK/ (last visited February 2, 2007). The purpose of the procedure is to "reduce a person's dependency on glasses or contact lenses." *Id.*

2. After deducting attorney's fees and costs, Morgan received $33,900.00.

¶ 8 On November 7, 2003, the Nevyases instituted a civil action against Morgan by filing a complaint which contained counts for defamation, breach of contract, and specific performance. On November 10, 2003, the Nevyases filed a petition for a temporary restraining order and preliminary injunction, which were denied on November 18, 2003. On December 3, 2003, the Nevyases filed an amended complaint and, on December 8, 2003, Morgan filed an answer with new matter and a counterclaim. In his answer, Morgan raised his constitutional right to free speech as a defense. On June 7, 2004, after reinstating their amended complaint, the Nevyases joined Attorney Friedman as an additional defendant in a second amended complaint, alleging defamation based on letters he wrote to the U.S. Food and Drug Administration that Morgan posted on his website. On January 10, 2005, Morgan filed a motion to proceed *in forma pauperis,* which the trial court granted on February 16, 2005.

¶ 9 On July 26, 2005, the case proceeded to a non-jury trial limited to count III of the second amended complaint, the count for specific performance. Count III was described at trial as follows:

Plaintiff's [sic] and Morgan entered into a contract whereby defendant agreed to remove any and all references to plaintiff's [sic] and their medical practice from the website and plaintiff agreed not to file a defamation lawsuit against Morgan. Defendant ... has willfully breached the contract by reconstructing the ... [www.lasiksucks4u.com] website replete with references to plaintiff's and their medical practice.

[P]laintiff [sic] has suffered and continues to suffer damages due to defendant's breach of contract and has no adequate remedy at all. Therefore, plaintiffs demand that judgment in their favor

against Morgan granting temporary and permanent relief in their favor against Morgan compelling specific performance of the defendants to honor the existing contract to remove any and all references to the plaintiffs and their medical practice, to desist from defaming the plaintiffs and compelling the defendants, remove the defamatory material from the www.lasiksucks4u.com website. Plaintiff's have no adequate remedy at law.

*Id.,* at 35–36. At trial, Morgan was represented by Attorney Friedman.

¶ 10 At trial, the Nevyases read portions of Morgan's deposition transcript into the record. Specifically, Morgan testified at his deposition that he removed the references to the Nevyases after he received the July 30, 2003 letter "so that [his] website would not get shutdown" and to avoid being sued. *Id.,* at 37.

¶ 11 The Nevyases also read portions of Attorney Friedman's deposition into the record. At his deposition, Attorney Friedman testified that he "suggested" that Morgan revise his website to avoid a lawsuit. *Id.,* at 39. The Nevyases asked Attorney Friedman what his understanding of the agreement the parties purportedly reached in 2003. The Nevyases noted that they construed the agreement as Morgan "was to make the changes to the website, remove the defamatory material and [they] agreed not to sue[.]" *Id.,* at 41. Attorney Friedman testified that he did not "think that there was an agreement on that." *Id.* Attorney Friedman testified that the changes to the website were made "[o]n the basis the way the website was after Morgan made his changes in July or August of 2003 you were not going to sue." *Id.,* at 42.

¶ 12 Herbert Nevyas, M.D., also testified at trial. Dr. Nevyas testified, in pertinent part, that he agreed in July of 2003

not to sue Morgan if the statements concerning him, his daughter, and their medical practice were removed.

¶ 13 Morgan testified that while he revised his website "to remove any stated libelous reference to the Nevyas[es] and their practice," he specifically let them know, by letter, that he would continue to update his website "as allowed by the law and the First Amendment...." *Id.*, at 68–69. Morgan also testified that he never promised to not mention the Nevyases or their medical practice in the future. Morgan also testified that in response to the July 30, 2003 letter he "put the website back to its original state which had no mention of the Nevyas[es]' name." *Id.*, at 74.

¶ 14 The trial court found that Morgan and the Nevyases entered into an agreement in that "the parties had agreed that in exchange for the Nevyas[es]' agreement to refrain from filing a lawsuit against Morgan for Defamation, Morgan would remove all defamatory statements from the site and refrain from doing so in the future." Trial Court Opinion, 4/25/06, at 3. In fact, the trial court entered an order that forbids Morgan from mentioning the Nevyases at all. *See* Order, 10/19/05. *See also N.T.*, Trial, 7/26/05, at 85–86. This timely appeal followed.

¶ 15 On appeal, Morgan raises the following issues for our review:

1. Did Morgan's alteration of his website in response to the Nevyases' threat to sue him for defamation, coupled with the exchange of correspondence about that threat and his response, constitute an agreement by Morgan never to mention the Nevyas name on any Internet web site?

. . .

2. May a court find a waiver of the First Amendment right to criticize a doctor who has allegedly botched a surgery, without clear and unmistakable evidence that the defendant knowingly and willingly waived his free speech rights?

. . .

3. Does the injunction entered below constitute an impermissible prior restraint that exceeds the scope of the purported contract, as read pursuant to the rule that a purported waiver of First Amendment rights must be narrowly construed?

. . .

4. Did the court below abuse its discretion and effectively deprive defendant of his counsel by telling defendant's lawyer, Steven Friedman, that if defendant refrained from appealing the injunction, the court would dismiss plaintiffs' complaint against the lawyer?

. . .

Appellant's Brief, at 2–3.

¶ 16 Before we proceed to the merits of this appeal we must first address the Nevyases' motion to quash Morgan's appeal. The Nevyases maintain that the appeal must be quashed as Morgan failed to file a motion for post-trial relief pursuant to Pa. R.C.P., Rule 227.1, 42 Pa. Cons.Stat.Ann., and due to the trial court's revocation of Morgan's *in forma pauperis* status.

¶ 17 Morgan appeals from the trial court's order that enjoins him from mentioning the Nevyases on any web sites. The trial court's order is not a final order; the order effectively resolved the counts against Morgan, but claims against Fried-

man and Morgan's counterclaim remain to be decided. However, as it is an appeal from an order granting an injunction, Morgan's appeal is an interlocutory appeal as of right. *See* Pa.R.A.P., Rule 311(a)(4), *Injunctions*, 42 PA. CONS.STAT.ANN.

¶ 18 It is well-established in Pennsylvania appellate courts that it is improper to file a motion for post-trial relief when appealing pursuant to Rule 311. *See, e.g., Kennedy & Carter Construction Co. v. Barkley*, 321 Pa.Super. 348, 468 A.2d 513 (1983); *City of Philadelphia v. Frempong*, 865 A.2d 314, 317 (Pa.Cmwlth.2005). *See also* WEST'S PENNSYLVANIA PRACTICE, APPELLATE PRACTICE § 302:17 (2007 ed.) ("Such orders [i.e., orders within the purview of Rule 311] are appealable when entered, and neither post-trial motions nor exceptions are required or permitted."). Accordingly, the Nevyases' contention that Morgan's appeal must be quashed due to his failure to file post-trial motions is without any support in the law and, as such, must be denied.

¶ 19 The Nevyases next argue that the trial court properly revoked Morgan's *in forma pauperis* status and that since he has not paid any costs associated with this appeal, the appeal should be quashed. Morgan attained *in forma pauperis* status in the trial court. Morgan then filed an appeal on October 28, 2005. While his appeal was pending in this Court, the trial court, on January 6, 2006, revoked Morgan's *in forma pauperis* status. Morgan argues that the trial court erred in entering an order revoking his *in forma pauperis* status while this case was on appeal. We agree.

¶ 20 Pennsylvania Rule of Appellate Procedure 1701 explains that the general rule is that "after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the mat-

ter." Pa.R.A.P., Rule 1701(a), 42 PA. CONS. STAT.ANN. There are, however, exceptions to the general rule of Rule 1701(a), and they are listed in Rule 1701(b). Among the listed exceptions is that the trial court may "grant leave to appeal in forma pauperis...." Pa.R.A.P., Rule 1701(b), 42 PA. CONS.STAT.ANN. This authority enjoyed by the trial court stems from Rule 552 of our Rules of Appellate Procedure. Rule 552 states, in pertinent part, the following:

> A party who is not eligible to file a verified statement under Rule 551 (continuation of in forma pauperis status for purposes of appeal) may apply to the lower court for leave to proceed on appeal in forma pauperis. The application may be filed before or after the taking of the appeal, but if filed before the taking of the appeal, the application shall not extend the time for the taking of the appeal.

Pa.R.A.P., Rule 552(a), 42 PA. CONS.STAT. ANN.

¶ 21 Unlike Rule 552(a), which, as noted, expressly permits the trial court to *grant in forma pauperis* status while a case is on appeal, Rule 551(a) states that "[a] party who has been granted leave by a lower court to proceed in forma pauperis may proceed in forma pauperis in an appellate court...." Pa.R.A.P., Rule 551(a), 42 PA. CONS. STAT.ANN. To continue to proceed *in forma pauperis* the appellant must file a verified statement containing the information provided by the Rule. *See* Pa.R.A.P., Rule 551(a)(1)-(3), 42 PA. CONS.STAT.ANN. Once an appellant has complied with the Rule, the appellant is relieved from paying the filing fees associated with the appeal. *See* Pa.R.A.P., Rule 552(b), 42 PA. CONS. STAT.ANN.

¶ 22 In the present case, the trial court revoked the *in forma pauperis* status of Morgan while Morgan was proceeding un-

**14**

der Rule 551. Our research has failed to disclose any authority for the trial court to take such action once the matter is pending in this Court, and neither the trial court nor the Nevyases provide us with any such authority.

¶ 23 Rule 1701 divests the trial court of authority to proceed further in a matter once an appeal has been taken, except for certain specified exceptions. While the grant of *in forma pauperis* status is one such exception, revocation of *in forma pauperis* status is not; rather, Rule 551 specifically permits an appellant to continue *in forma pauperis* status on appeal. Furthermore, Rule 555 specifically mandates that "[a] party permitted to proceed in forma pauperis has a continuing obligation *to inform the appellate court* of improvement in the financial circumstances of the party." Pa.R.A.P., Rule 555, 42 Pa. Cons.Stat.Ann. (emphasis added).

¶ 24 Based on the framework of rules dealing with *in forma pauperis* status, described above, we find that the authority to revoke *in forma pauperis* status under Rule 551, while an appeal is pending, is vested in this Court, not the trial court. As such, the trial court's order revoking Morgan's *in forma pauperis* status is a nullity. Therefore, the Nevyases' motion to quash is without merit. Accordingly, we proceed to the merits.

¶ 25 Our standard of review is well-settled:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 549, 550 (Pa.Super.2004), *appeal denied*, 583 Pa. 667, 876 A.2d 392 (2005) (internal citations and quotation marks omitted).

¶ 26 As mentioned, the trial court found that Morgan agreed to stop mentioning the Nevyases and their practice on any website. The trial court explained its finding as follows:

My understanding of the agreement was that as to the letter that Mr. Morgan sent on August 1st he said that he was going to remove the libelous statements. However, he then, as he testified to, went back to the original website in response to the letter, i.e., the offer by the plaintiff [sic] to take no further action if in relation what his request was [sic]. And the defendant's understanding of what he did then in compliance with that is his acceptance of the offer was that he would go back to his original website which did not mention Dr. Nevyas' [sic] name.

N.T., Trial, 7/26/05, at 86. Additionally, the trial court further explained "that in fact Mr. Morgan's alteration of his website was in fact the offer which was accepted by the plaintiff for mutual consideration." *Id.*, at 92.

¶ 27 At the outset, we note that speech on the internet receives First Amendment protection. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 869, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The trial court found that Morgan waived his First Amendment rights and agreed not to mention the Nevyases or their medical practice on his internet website. For the reasons

set forth below, while we find no error in the trial court's finding with respect to the defamatory statements on the website as of July 30, 2003, the trial court's finding of all other reference to the Nevyases is simply untenable.

¶ 28 With respect to contracts, we note that

> [t]he interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Currid v. Meeting House Restaurant, Inc.,* 869 A.2d 516, 519 (Pa.Super.2005), *appeal denied,* 584 Pa. 694, 882 A.2d 478 (2005) (citation omitted).

¶ 29 In the cease and desist letter, the Nevyases demanded that Morgan "immediately remove this web site and the falsehoods contained within that site or legal action will be instituted against you immediately." Letter, dated 7/30/05. As noted, Morgan responded to the July 30, 2003 letter on August 1, 2003, in which he noted that he "conformed to your request insofar as to remove any stated libelous reference to the Nevyas and their practice only[.]" N.T., Trial, 7/26/05, at 68. Morgan further wrote in the letter, however, that he would

> not remove the website in its entirety and will be updating this site or others with facts of my care, treatment, history,

all of the legal issues pertaining to my case and all necessary documentation substantiating those facts within the legal guidelines as allowed by the law and the First Amendment which grants me freedom of speech[.]

*Id.,* at 68–69. Thereafter, Morgan kept his website; he simply uploaded the original version of it, which contained no reference to the Nevyases or their medical practice.

¶ 30 We agree with the trial court that Morgan agreed to take down the *specific* libelous wording from his website as posted on July 30, 2003, and that, pursuant to the agreement, those *specific* libelous statements were to be prohibited thereafter. *See id.,* at 68. We cannot agree, however, that Morgan's action of uploading the original website content, which contained no reference to the Nevyases or their medical practice, constituted an agreement on his part to never again mention them, for example, even in a non-defamatory context. Rather, his letter specifically reserved the right to "update" his website "within the legal guidelines as allowed by the law and the First Amendment which grants me freedom of speech." *Id.,* at 68–69. The trial court's interpretation of the agreement in this respect is incongruous given Morgan's August 1, 2003 letter. *See Jenkins v. County of Schuylkill,* 441 Pa.Super. 642, 658 A.2d 380, 383 (1995), *appeal denied,* 542 Pa. 647, 666 A.2d 1056 (1995) ("It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration or *mutual meeting of the minds.*") (emphasis added). Likewise, we find that Morgan did not agree to waive his right to make, if he so chooses and at his own risk, libelous statements in the future, unrelated to the statements on his website as of July 30, 2003.

¶ 31 The question remains, however, whether the statements that appeared on the website that are the subject of this action are the same as the prohibited postings of July 30, 2003, and, of course, if not, whether they are in fact defamatory. Accordingly, because these issues were not addressed by the trial court, we vacate the order and remand for further findings and proceedings consistent with this Opinion.[3]

¶ 32 In his fourth, and final, issue presented on appeal, Morgan requests that we remove Judge Maier from this case on remand. We do not, however, have the authority to, in effect, *sua sponte* remove Judge Maier. *See Commonwealth v. Whitmore,* 590 Pa. 376, 388, 912 A.2d 827, 834 (2006) (holding Superior Court cannot sua sponte remove a trial judge as "[t]he parties are required to file a motion to recuse and for the judge in question to rule; his or her decision must stand absent an abuse of discretion[ ]"). In the present case, Morgan has not filed a motion to recuse with Judge Maier. As such, this issue is controlled by Whitmore.

¶ 33 Order vacated and case remanded for proceedings consistent with this Opinion. Motion to quash denied. Jurisdiction relinquished.

---

3.  Our disposition makes it unnecessary to reach Morgan's second and third issues presented on appeal.