## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Furst,
            Appellant

       v.

Easton Area School District and
Easton Area Board of Education

:
:
:
:
: No. 702 C.D. 2018
: ARGUED: June 3, 2019
:
:
:

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: July 9, 2019

Stephen T. Furst (Furst) appeals from a judgment entered following a non-jury trial in the Court of Common Pleas of Northampton County (trial court).[1] Furst alleges he was constructively discharged from his employment by the Easton Area School District (District) in retaliation for reporting another employee's wrongful conduct, contrary to the safeguards of the Whistleblower Law.[2] He asserts numerous errors in the trial court's findings of fact, legal analysis, and evidentiary rulings. After thorough review, we affirm.

---

[1] The Honorable Emil Giordano presided.

[2] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

# I. Background

Furst was employed by the District from January 1985 to December 2015. He served first as a music teacher and orchestra director and later in a variety of administrative positions.

In October 2012, Furst learned Tom Drago (Drago), the District's Director of Information Technology, was accessing Furst's work computer remotely. Suspecting the access was unauthorized by the District, Furst reported it to the District's Superintendent. After an investigation, the District instituted termination proceedings against Drago, who resigned prior to his termination hearing.

In January 2013, Furst and several other District administrators reported Drago's conduct to local police, who conducted a criminal investigation. A grand jury ultimately concluded Drago had abused his authority by surreptitiously accessing computers of District administrators, had violated the District's Acceptable Use Policy (AUP) relating to computers by downloading and storing nude photographs on his District computer, and had violated the Wiretapping and Electronic Surveillance Control Act.[3]

In 2013, the District hired a new Superintendent, John Reinhart (Reinhart). Reinhart instituted a reorganization plan for the District's administration. It involved repositioning nine employees. As part of the plan, Furst's position, then Director of Teaching and Learning, was divided into separate positions for grades K-6 and 7-12. Furst was not retained in either position, but instead was reassigned with the title of 7/8 Building Principal.[4]

---

[3] 18 Pa. C.S. §§ 5701-5782.

[4] The record does not explain the meaning of this title. We infer that it refers to a school building for grades 7 and 8.

Furst complained to Reinhart, challenged his demotion before the District's Board of Education (Board), and appealed the Board's decision to the Secretary of Education (Secretary). In January 2016, the Secretary issued a decision concluding that Furst's demotion was lawful and not in retaliation for his report of Drago's conduct.

Meanwhile, in July 2015, Furst was promoted to a newly created position, Director of Assessment and Accountability. After Furst reported a concern that his computer might not be properly transmitting his outgoing emails, the District's ensuing investigation revealed photographs stored in Furst's work computer that potentially violated the AUP. At an initial hearing attended by Furst, his attorney, Reinhart, and the District's solicitor, Furst stated the photographs were not his and must have been placed in the computer by some other employee to whom the computer was previously assigned. However, the computer's hard drive contained a photograph stored there after Furst took possession of the computer, and his iPhoto library and Dropbox[5] also contained photographs allegedly violative of the AUP.

After the initial hearing, the District began the process of considering whether to bring formal charges for termination against Furst. However, before presentment of any charges, Furst executed a separation agreement with the District in December 2015 providing for his resignation and retirement. Had Furst not chosen to enter into the separation agreement, and had the District ultimately decided to pursue termination, Furst would have been entitled to a *de novo* hearing before the Board, and if the outcome was unfavorable, another *de novo* hearing before the Department of Education.

---

[5] Dropbox is a personal online backup storage service which can be accessed remotely. https://searchmobilecomputing.techtarget.com/definition/Dropbox (last visited July 8, 2019).

Following his agreed resignation and retirement, Furst filed a civil complaint against the District and the Board. After several amendments, Furst's third amended complaint, filed solely against the District, alleged that the District constructively discharged Furst and discriminated against him in retaliation for his reporting of Drago's misconduct, in violation of the Whistleblower Law. The trial court conducted a non-jury trial that took place over several days. The parties then submitted proposed findings and conclusions and supporting briefs. The trial court determined that Furst was constructively discharged, but that he failed to produce sufficient evidence of a causal connection between the discharge and his report of Drago's misconduct to support a finding of retaliation. The trial court therefore denied relief. Furst filed a motion for post-trial relief, which the trial court denied. This appeal followed.

## II. Issues

On appeal,[6] Furst presents six issues, which he frames as follows:

A. Whether the trial court erred in finding that [Furst] failed to present sufficient evidence to establish that his 2013 demotion and 2015 resignation were the result of retaliation in violation of the [Whistleblower Law] due to his reporting the wrongdoing of [Drago].

B. Whether the trial court erred in finding that [Furst] [was] unable to present evidence sufficient to establish a causal connection between his report and his demotion.

---

[6] Our review on appeal following a non-jury trial is limited to determining whether, considering the evidence in the light most favorable to the verdict winner, the trial court's findings are supported by competent evidence, or whether there was an error of law. *James Corp. v. N. Allegheny Sch. Dist.*, 938 A.2d 474 (Pa. Cmwlth. 2007) (citing *Nevyas v. Morgan*, 921 A.2d 8 (Pa. Super. 2007)). The trial court's findings of fact have the same weight and effect on appeal as a jury verdict. *Id*. This Court will not disturb the trial court's credibility determinations or reweigh the evidence. *Bd. of Supervisors v. Main Line Gardens, Inc.*, 184 A.3d 615 (Pa. Cmwlth.), *appeal denied*, 196 A.3d 614 (Pa. 2018) (citing *Swift v. Dep't of Transp.*, 937 A.2d 1162 (Pa. Cmwlth. 2007)).

4

C. Whether the trial court erred in finding that [Furst] failed to establish the requisite causal connection between his reporting of Drago and his 2015 resignation in light of its finding that Furst had presented sufficient evidence to establish that his 2015 resignation was the result of constructive discharge.

D. Whether the trial court erred in denying [Furst's] claim for relief as no new evidence was presented after the [trial] court found that the District was liable for its retaliatory actions to Furst in its decision denying the District's motion for a nonsuit.

E. Whether the trial court erred in admitting into evidence and basing its opinion upon the order and opinion of the Secretary of Education when it had previously ruled the same inadmissible.

F. Whether the trial court erred in permitting John Freund, Esquire, trial counsel for the [District] to testify contrary to Rule 3.7 of the Pennsylvania Rules of Professional Conduct [Pa. R.P.C. 3.7] and over the objection of [Furst].

We address each issue in turn.

## III. Discussion

### A. Sufficiency of the Evidence of Retaliation

The Whistleblower Law proscribes discriminatory or retaliatory conduct against an employee for reporting wrongdoing by a public body. Section 3 of the Whistleblower Law, 43 P.S. § 1423(a). Here, the trial court determined Furst was an "employee," Drago was deemed a "public body," and Drago's conduct constituted "wrongdoing" as those terms are defined in the Whistleblower Law. Section 2 of the Whistleblower Law, 43 P.S. § 1422. Thus, Furst asserted, and the trial court agreed, that the Whistleblower Law applied to Furst's report of Drago's misconduct.

Nonetheless, the trial court concluded Furst had failed to sustain his burden of proving the District retaliated against him based on his report concerning Drago.

5

Furst argues the trial court committed reversible error in both its factual findings and its legal analysis. We disagree.

### 1. Trial Court's Findings of Fact

Furst contends the trial court committed errors of fact that made its analysis of the Whistleblower Law "confusing and contradictory." Br. for Appellant at 23. This assertion by Furst lacks merit.

Furst suggests the trial court erred in stating that Dr. Susan McGinley (Dr. McGinley), the District's former superintendent, did not testify. Furst infers that as a result, the trial court failed to consider Dr. McGinley's testimony. However, the trial court was correct. Dr. McGinley did not testify at the trial in this case due to ill health. Instead, the trial court allowed into evidence a transcript of her prior testimony in the proceeding before the Department of Education.

Moreover, the relevant fact for which Furst relied on Dr. McGinley's prior testimony was that she did not authorize Drago to access computers assigned to District administrators. The trial court ultimately concluded Drago's conduct constituted wrongdoing under the Whistleblower Law, so the trial court evidently determined Drago's access of the administrators' computers was unauthorized. Even assuming the trial court erred in stating Dr. McGinley never testified, or that it failed to consider her testimony, any such error was harmless.

Furst's other assertions of inconsistencies in the trial court's factual findings are similarly without merit. Assuming there was any ambivalence in the trial court's analysis concerning wrongdoing by Drago[7] as Furst contends, the trial court ultimately concluded there *was* wrongdoing, thus bringing Furst's reporting within

---

[7] No wrongdoing by the District in 2012 is at issue. The trial court found there was no wrongdoing by the District in conducting its investigation and action to terminate Drago's employment following Furst's report.

6

the protection of the Whistleblower Law. Accordingly, the trial court's error in this regard, if any, was harmless.

## 2. Applicable Burdens of Proof

Citing *Golaschevsky v. Department of Environmental Protection*, 720 A.2d 757 (Pa. 1998), the trial court observed that Furst was required to demonstrate retaliatory conduct on the part of the District, by concrete facts or surrounding circumstances establishing that his report concerning Drago led to his demotion and subsequent resignation. The trial court concluded Furst failed to sustain this burden because he was unable to demonstrate the requisite causal connection between Furst's report and his subsequent demotion and resignation.

Furst argues that *Golaschevsky* imposes a framework of shifting burdens. The employee must initially produce evidence of a causal connection between his report of wrongdoing and the employer's alleged retaliatory acts. The burden then shifts to the employer to establish a legitimate reason for the adverse action. Finally, the employee must prove the employer's proffered reason was a pretext for retaliation.

Furst contends the trial court failed to apply the correct legal analysis on this issue. We discern no merit in this contention.[8] The trial court applied the correct burden of proof. The ultimate burden was Furst's, and the trial court was within its discretion in finding he failed to sustain that burden.

The trial court concluded Furst failed to demonstrate that the District acted in retaliation for his report concerning Drago. Although several Board members were upset by the 2012 report and resulting police investigation, and one or more expressed personal opinions that Furst and other administrators should be fired, the Board never took any action in that regard. The trial court credited evidence that

---

[8] We note with disapproval Furst's reliance on a concurring opinion in *Golaschevsky*, without identifying it as such.

Furst's 2013 demotion was part of a District-wide administrative reorganization plan created by Reinhart, who was not employed by the District at the time of the Drago report. The trial court further cited the Secretary's adjudication and conclusion that Furst's demotion was lawful and not retaliatory.[9]

Moreover, by the time the District investigated and considered terminating Furst in 2015, only three of the members from the 2012 Board remained, which the trial court found was not a sufficient number to take adverse action against Furst based on his 2012 report. Further, Furst received a promotion in July 2015. Although he argued this was merely part of a scheme to force him out, the trial court evidently did not credit that assertion. The trial court also observed that the three-year time lag between Furst's report of Drago and the District's investigation of Furst supported the District's position that the 2015 investigation and hearing were unrelated to the 2012 report.

Although Furst insists the trial court ignored contrary evidence, the record reveals ample support for the trial court's factual findings. The trial court did not abuse its discretion in concluding Furst failed to sustain his burden of demonstrating that the District demoted, then investigated and considered terminating him, in retaliation for his 2012 report concerning Drago.

### B. Weight of the Evidence

In a related argument, Furst strenuously asserts that the trial court's findings of fact were against the weight of the evidence. This argument is likewise without merit. The trial court in a non-jury trial functions as the trier of fact, and as noted above, its findings are entitled to the same effect as a jury verdict. *See James Corp.*

---

[9] Furst's argument that the trial court improperly admitted the Secretary's adjudication into evidence is addressed in Section E below.

*v. N. Allegheny Sch. Dist.*, 938 A.2d 474 (Pa. Cmwlth. 2007). Viewing the evidence in the light most favorable to the District as the verdict winner, as we must, *id.*, we find the trial court's decision was supported by competent evidence. This Court will not reweigh the evidence.

## C. Causal Connection

In his next argument, Furst insists the trial court, having found he was constructively discharged[10] in 2015, reasoned inconsistently by failing to find a causal connection between that discharge and his 2012 report concerning Drago. We disagree. Contrary to Furst's suggestion, there is nothing inherently inconsistent in the trial court's conclusion that Furst's constructive discharge in 2015 was unconnected to his 2012 report.[11] As discussed above, the trial court pointed out that three years elapsed between those events, during which most of the Board members changed and Furst received a promotion. Like Furst's prior arguments, this is mainly a challenge to the factual evidence, which we decline to reweigh.

---

[10] We note that Furst later filed a separate mandamus action against the District and the Board, seeking reinstatement of his employment based on the trial court's earlier finding of constructive discharge in this action. The trial court dismissed that action upon the District's preliminary objections. Furst's appeal of that dismissal is presently pending before this Court at Docket No. 54 C.D. 2019.

[11] The trial court's reasoning concerning constructive discharge may be flawed, in that its determination was based on a finding that the District failed to offer Furst sufficient due process and that he had no ability to refuse the separation agreement. Furst was represented by counsel, and the trial court found he had ample time to consider the separation agreement. Moreover, the trial court specifically acknowledged that Furst could have availed himself of *de novo* hearings both before the Board and before the Department of Education, had he chosen to resist termination. Finally, the record does not indicate whether the District ever actually made a formal decision to pursue termination.

However, in light of our disposition of this appeal, any potential error in this regard is harmless.

9

**D. Trial Court's Denial of Nonsuit at Trial**

Furst next contends the trial court was inconsistent in entering a verdict in favor of the District after denying the District's motion for nonsuit at the conclusion of Furst's case-in-chief. Furst reasons that because the District presented little new evidence in its own case, the trial court improperly reversed its previous position. Furst cites no supporting authority for the proposition that denying a nonsuit is tantamount to a verdict for the plaintiff. Indeed, this argument has no basis in law.

In denying the motion for nonsuit, the trial court correctly observed that it was required to consider only Furst's evidence and any evidence from the District that was favorable to Furst, and to consider that evidence in the light most favorable to Furst. *See* Pa. R.C.P. No. 230.1(a)(2). The trial court correctly stated that it could not grant a nonsuit unless the evidence and any reasonable inferences from it, considered in the light most favorable to Furst, compelled the conclusion that the District was not liable to Furst. *See Barnes v. Alcoa*, 145 A.3d 730 (Pa. Super. 2016). Denial of the nonsuit was merely an acknowledgment that a verdict for Furst would not be impossible.

In short, the trial court was not weighing the evidence as the finder of fact when it ruled on the motion for nonsuit. There was nothing inconsistent in the court's subsequent verdict in favor of the District. Carrying Furst's argument to its logical conclusion, a jury could never render a verdict for a defendant in a case where the trial court denied a nonsuit motion at the end of the plaintiff's case. That is simply not the law.

**E. Evidence of Hearing before the Department of Education**

Next, Furst points out that the trial court issued a pretrial ruling excluding all evidence concerning the hearing before the Department of Education and the

Secretary's subsequent determination concerning Furst's demotion. Furst claims to have relied on the pretrial ruling in preparing for the trial in this case. Thus, Furst asserts the trial court erred in admitting and relying on that evidence at trial. This argument is meritless. Furst consented on the record to the admission of that evidence.

The record reveals that after the conclusion of the live testimony at trial, the trial court had a discussion with counsel concerning Dr. McGinley's inability to appear at trial and the possible admission of her testimony before the Department of Education in lieu of live testimony. The following colloquy occurred:

> THE COURT: . . . So do you object to her testimony coming in?
>
> [District Counsel]: Your Honor, what we previously offered was, *if that testimony was coming in, the full record would come in.* What they are talking about is the testimony from the demotion hearing.
>
> * * *
>
> [Furst Counsel]: Your Honor, if by full record, they mean the testimony of all witnesses, we don't have an objection to that.
>
> THE COURT: Fine. It is in.
>
> * * *
>
> [District Counsel]: Your Honor, with regard to the testimony of Dr. McGinley, it is our position that if her testimony comes in, we would want the rebuttal testimony of Mr. Simonetta.
>
> THE COURT: Did he testify at the demotion? Yes, *everything from that demotion hearing is in. Everything. I will review it all.*

Reproduced Record (R.R.) at 1438a-40a (emphasis added). Although Furst may have preferred to limit admission of the demotion hearing record to the testimony of the witnesses, the trial court plainly stated it would consider "everything" from the demotion hearing, and *Furst raised no objection.* He chose to let in the full record

11

from that hearing in order to submit the testimony of Dr. McGinley. Furst must abide by that choice.

### F. Testimony of District Counsel

At trial, the District called John Freund, Esquire (Freund), the District's solicitor, to provide fact testimony. The trial court had denied a pretrial motion to preclude that testimony. The testimony was admitted at trial over Furst's renewed objection. In his final argument, Furst contends the trial court erred by allowing Freund to testify at trial. Furst suggests that because Freund was the District's lawyer, his testimony as a witness violated the Pennsylvania Rules of Professional Conduct. We disagree.

Rule 3.7(a) of the Pennsylvania Rules of Professional Conduct provides, in pertinent part: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: . . . disqualification of the lawyer would work substantial hardship on the client." Pa. R.P.C. 3.7(a)(3). Citing the Explanatory Comment to Rule 3.7 and *Commonwealth v. Gibson*, 670 A.2d 680 (Pa. Super. 1996), Furst argues that allowing an advocate to testify at trial may blur the line between testimony and advocacy, creating confusion as to whether the testimony "should be taken as proof or as an analysis of the proof." Br. for Appellant at 60-61.

As the District's trial counsel aptly pointed out to the trial court, the risk of such confusion is absent in a bench trial: "[I]n a bench trial, you don't have that same risk of confusion because a jurist is more than adept at discerning . . . when a witness is being an advocate or a witness." R.R. at 1300a.

Indeed, *Gibson* expressly supports that principle. In *Gibson*, the trial court in a bench trial refused to allow the defendant's attorney to provide fact testimony

12

concerning his conversation with a co-defendant. The Superior Court found precluding that testimony was reversible error. In so holding, the court observed that a trial attorney is competent to testify on his client's behalf. *Id.* (citing *Com. v. Willis*, 552 A.2d 682 (Pa. Super. 1988), *superseded in part by statute on other grounds*, 42 Pa. C.S. § 5985.1, *as recognized in Com. v. Bond*, 190 A.3d 664 (Pa. Super. 2018)). The court also concluded that any possibility of undue weight given to counsel's testimony was minimized in a bench trial. *Id.*

Here, as in *Gibson*, Rule 3.7 did not preclude the trial court's admission of testimony by counsel for a party in a non-jury trial.

Moreover, the only supposed prejudice to which Furst points as arising from Freund's testimony is that the trial court denied a nonsuit before Freund testified, then entered a verdict in the District's favor after Freund's testimony. As discussed in Section D above, denial of a nonsuit is no indication that the final verdict will favor the plaintiff.

Furst does not point to anything in Freund's testimony that would have been dispositive of the case. Indeed, in asserting that denial of the nonsuit entitled him to a favorable verdict, Furst specifically suggested the District presented nothing further of any moment during its defense after denial of the nonsuit.

We find the trial court did not err in admitting Freund's testimony.

## IV. Conclusion

Based on the foregoing discussion, we affirm the decision of the trial court.

_____
ELLEN CEISLER, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen T. Furst,                       :
             Appellant       :
                       :
      v.                :  No. 702 C.D. 2018
                       :
Easton Area School District and  :
Easton Area Board of Education  :

# **O R D E R**

AND NOW, this 9th day of July, 2019, the order of the Court of Common Pleas of Northampton County is AFFIRMED.

_____
ELLEN CEISLER, Judge