## IMPERIAL EXCAVATING AND PAVING, LLC

v.

**RIZZETTO CONSTRUCTION MANAGEMENT, INC., United States Fidelity & Guaranty Company and Atlantic Mutual Insurance Co.**

**Appeal of Rizzetto Construction Management, Inc. and United States Fidelity & Guaranty Co.**

Superior Court of Pennsylvania.

Submitted May 24, 2007.

Filed Oct. 23, 2007.

Wendy R.S. O'Connor, Allentown, for Rizzetto, appellant.

Jamie M. McFadden, Allentown, for appellee.

BEFORE: MUSMANNO, GANTMAN, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellants, Rizzetto Construction Management, Inc. ("RCMI") and United States Fidelity and Guaranty Company, Inc., appeal from the judgment entered on November 29, 2006, by the Honorable Edward D. Reibman of the Court of Common Pleas of Lehigh County. After careful review, we affirm.

¶ 2 The instant breach of contract action centers on work to be done on two soccer fields located at Southern Lehigh High School. RCMI was awarded a principal construction contract to perform extensive work for the Southern Lehigh School District. RCMI entered into a subcontract with Imperial Excavating and Paving, LLC ("Imperial") for various tasks, including the removal of the existing topsoil at the site, as well as grading and compacting the subsoil.

¶ 3 Imperial removed the topsoil and compacted the subsoil before redistribut-

ing compacted topsoil to a depth marked on stakes placed by an RCMI-employed surveyor. At the time that Imperial performed the grading, RCMI made no objection to the quality or performance of its work. Upon completion of the earthwork for the soccer fields, Imperial submitted its Applications and Certificates for Payment Forms and ceased work on the soccer fields.

¶ 4 RCMI then submitted its Application and Certification for Payment Form No. 1 to the Southern Lehigh School district which included a request for payment for the work performed by Imperial on the two soccer fields. Application and Certificate for Payment Form No. 1 was dated September 11, 2001, and was signed by the architect on September 12, 2001. On September 25, 2001, Southern Lehigh School District, along with payment for other work, paid RCMI for the entirety of the earthwork performed on the soccer fields by Imperial less retainage, and RCMI in turn paid Imperial.

¶ 5 Following the completion of Imperial's work on the soccer fields, RCMI subcontracted with Wolk's Landscaping, Inc. ("Wolk") to perform corrections of undulations and irregularities, rock removal, laser assisted grading, cultivating and restructure of the topsoil, cultivating and tilling of the subsoil, re-grading, additional stone picking, and seeding. More importantly, section 3.1A of the Lawns and Grasses component of the subcontract between Wolk's Landscaping, Inc. and RCMI specifically provided that Wolk had to correct any irregularities in soil structuring and "apply 6 inches of top soil to seeded athletic fields." Lawns and Grasses, 6/25/01, § 3.1(A)(1).

¶ 6 After Wolk completed all of its work and seeded the fields, Southern Lehigh School District allowed the fields to remain fallow for a period of two years. Thereaf-

ter, in the spring of 2003, Southern Lehigh began using the completed soccer fields and experienced problems, including inadequate topsoil grading, pooling of water with drainage problems, excess rocks and a lack of consistent growth of grass on the fields. Southern Lehigh hired soil experts and had an "As Built" survey performed. The survey revealed that the topsoil did not measure a uniform six inches but instead varied, with some spots several inches above and some spots below the required level. Testing also indicated that the topsoil had not been culled and tilled properly and was in a compacted state. Thereafter, in August 2003, the School District formally notified RCMI of its rejection of the soccer fields and withheld $120,000 from a payment for other services.

¶ 7 RCMI subsequently alleged that Imperial had failed to perform grading, cultivation, and tilling of the topsoil as required by the written subcontract. As a result, RCMI withheld payment on other work performed by Imperial, in addition to retainage, to cover amounts expended to address the School District's complaints concerning the soccer fields. Thereafter, in October 2003, RCMI hired the Brickman Group to perform work to correct problems with the soccer field. The cost of the work was $80,957.10. Invoices revealed that the work involved laser grading of topsoil, aeration, and seeding. Southern Lehigh School District formally accepted the repaired fields on October 17, 2005. RCMI also sought to impose charges of $2,350.00 and $2,500.00 on Imperial for the testing and surveying undertaken to ascertain the problems on the soccer fields, alleging that the costs were incurred in remedying Imperial's non-conforming work.

¶ 8 On December 8, 2005, Imperial filed a complaint against RCMI seeking dam-

ages for RCMI's failure to pay for other work performed by Imperial on the Southern Lehigh School District project. RCMI counterclaimed on January 24, 2005, alleging that Imperial had failed to meet its contractual obligations regarding the two soccer fields. Prior to trial both parties settled all portions of the case except those arising out of work performed by Imperial with respect to additions and renovations to Southern Lehigh High School.

¶ 9 On January 9, 2006, a bench trial was held before the Honorable Edward D. Reibman, who, after receiving evidence from both parties, ordered the submission of post-trial briefs. Judge Reibman, by order and opinion dated June 29, 2006, found in favor of Imperial and against RCMI and United States Fidelity and Guaranty Company in the amount of $255,154.78, and additionally against RCMI solely, in the amount of $7,175.50. Pursuant to the Prompt Payment Act,[1] RCMI was also ordered to pay interest, penalties and attorney's fees.

¶ 10 Thereafter, RCMI filed a motion for post-trial relief on July 7, 2006. On November 20, 2006, Judge Reibman denied the motion except to amend certain aspects of the court's award of interest and penalties and to award attorney's fees in favor of Imperial in the amount of $22,509.55. This timely appeal followed.

¶ 11 On appeal, RCMI presents the following issues for review:

   I.   Did the evidence cited by the court below constitute sufficient competent evidence to support its findings of fact that Imperial tendered full and satisfactory performance under the subcontract and that RCMI accepted that performance in the fall of 2001?

   II.   Were the findings of fact of the court below that Imperial tendered full and satisfactory performance under the subcontract and that RCMI accepted that performance in the fall of 2001 consistent with the great weight of evidence presented at trial?

   III.   Did the trial court err in awarding Imperial Prompt Payment Act penalties on the judgment where RCMI's withholding of payment bore a reasonable relationship to the value of its good faith claim against Imperial?

Appellant's Brief, at 5 (all-capitalized and bolded typeface removed for readability).

■ ¶ 12 RCMI first contends that the evidence presented at trial was insufficient to sustain a judgment in favor of Imperial. As recently explained by Judge Susan Peikes Gantman, when reviewing a challenge to the sufficiency of the evidence, the findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. *See Sovereign Bank v. Valentino*, 914 A.2d 415, 420 (Pa.Super.2006). Our standard of review is narrow, given that "[a] sufficiency analysis ... must begin by accepting the credibility and reliability of all evidence, viewed in the light most favorable to the verdict winner regardless of whether the appellant thinks that the evidence was believable." *Morin v. Brassington*, 871 A.2d 844, 851 (Pa.Super.2005).

¶ 13 In the case *sub judice*, RCMI argues that the evidence at trial was insufficient to establish that Imperial met all of its obligations under the subcontract. Ac-

1. 73 PA. STAT. §§ 501–516.

cordingly, we must review the exact contractual obligations of Imperial under the subcontract. It is a well established rule of contract interpretation that "[t]his Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Nevyas v. Morgan,* 921 A.2d 8, 15 (Pa.Super.2007), *citing Currid v. Meeting House Restaurant, Inc.,* 869 A.2d 516, 519 (Pa.Super.2005), *appeal denied,* 584 Pa. 694, 882 A.2d 478 (2005). A fundamental rule in construing a contract "is to ascertain and give effect to the intention of the parties." *Shovel Transfer and Storage, Inc. v. Pennsylvania,* 559 Pa. 56, 65, 739 A.2d 133, 137 (1999), *quoting Lower Frederick Township v. Clemmer,* 518 Pa. 313, 329, 543 A.2d 502, 510 (1988). We must look to the writing to determine the intention of the parties:

> It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. [*Shovel,* 559 Pa. at 65, 739 A.2d at 138.] When the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone. *Steuart v. McChesney,* 498 Pa. 45, 49, 444 A.2d 659, 661 (1982). *See J.K. Willison, Jr. v. Consolidation Coal Co.,* 536 Pa. 49, 54, 637 A.2d 979, 982 (1994)(contract terms must be construed as manifestly expressed by the parties and according to the accepted and plain meaning of the language used by the parties).

*Mace v. Atlantic Refining Marketing Corp.,* 567 Pa. 71, 80, 785 A.2d 491, 496 (2001).

¶ 14 We find the record relied upon by the trial court to be convincing in regards to the question of whether Imperial tendered full and satisfactory performance under the subcontract. The subcontract provided for Imperial to perform, *inter alia,* the work outlined in Project Specifi-

cation 02300 "Earthwork," and expressly excluded *"Layout and Engineering,* Permit Fees, *Soil/Compaction Testing ..."* which were left to RCMI and its other subcontracted agencies. Joint Exhibit No. 1, at § 5.2. Specifically, the subcontract required Imperial to remove the existing topsoil from the soccer fields, grade and compact the subsoil, and redistribute the topsoil. *Id.,* at § 5.1.

¶ 15 Furthermore, the subcontract did not require Imperial to perform the work outlined in Project Specification 02920, "Lawns and Grasses." *Id.* RCMI points to no specific provision of Project Specification 02300 which required Imperial to apply topsoil to a uniform depth of six inches and provide finish grading, and our independent research of the record has not revealed any such provision.

¶ 16 Despite the lack of any specific, explicit obligation imposed on Imperial under the subcontract, Imperial nonetheless was aware of the project specifications calling for a uniform six inches of topsoil. N.T., 1/9/2006, at 148–149. Furthermore, despite being under no explicit obligation to do so under the subcontract, Imperial applied topsoil to the soccer fields. *Id.,* at 149. Scott Moyer, a project superintendent for Imperial, testified that Imperial applied topsoil to the soccer fields to the six inch mark indicated on the surveyor's stakes on the field. *Id.*

¶ 17 Thereafter, on September 11, 2001, RCMI submitted an application for payment to the Southern Lehigh School district for work that included, *inter alia,* the work performed by Imperial on the soccer fields. Plaintiff's Exhibit 86, at 2. This application contained the following certification signed by a project architect:

> In accordance with the Contract Documents, based on on-site observations and the data comprising this application, the Architect certifies to the Owner that to

the best of the Architect's knowledge, information and belief the Work has progressed as indicated, **the quality of the work is in accordance with the Contract Documents,** and the Contractor is entitled to payment of the AMOUNT CERTIFIED.

*Id.* (emphasis added). Furthermore, the Application and Certification for Payment also included RCMI's signature certifying that "the undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents." *Id.* It is reasonable to infer from this certification that the architect reviewed the placement of the topsoil and noted that it had been graded to the marks placed on the surveying stakes.

¶ 18 Furthermore, it is important to note that Wolk was obligated under its subcontract to comply with the specifications contained in Project Specification 02920, "Lawns and Grasses." Defendant's Exhibit No. 0577–594, at § 5.2. Pursuant to this obligation, Wolk was required to provide a final topsoil grade within a one inch variance. N.T. 1/9/2006, at 181. Wolk never notified RCMI that the there was anything wrong with the topsoil on the site, or with Imperial's placement of topsoil. *Id.*, at 181–184.

¶ 19 It is also undisputed that the invoiced work performed by the Brickman Group to remedy the soccer fields consisted of importing topsoil and laser-grading it, two tasks explicitly assigned to Wolk and explicitly left out of the subcontract agreement between RCMI and Imperial. Defendant's Exhibit 501–506.[2] Viewing this evidence in the light most favorable to Imperial as verdict winner, we conclude that RCMI is entitled to no relief pursuant to its challenge to the sufficiency of the evidence supporting the trial court's finding of full and satisfactory performance. Given this conclusion, we need not address RCMI's alternative challenge to the trial court's verdict, i.e., the sufficiency of the evidence to support the trial court's finding that RCMI accepted Imperial's performance in the later months of 2001.

¶ 20 Next, RCMI argues that the trial court's verdict was against the weight of the evidence presented at trial.[3] The standard for determining whether a new trial is warranted based upon a weight of the evidence claim, following a verdict in a nonjury case, has been addressed by our Supreme Court:

> Given the unique nature of the power reposed in the trial court concerning a weight claim, this Court has emphasized on a number of occasions that, "[o]ne of the least assailable reasons for granting [or denying] a new trial is the lower court's conviction that the verdict was [or was not] against the weight of the

**2.** We note that RCMI also presented evidence that the subsoil of the soccer fields had not been tilled and compacted to the specifications set forth in Project Specification 02300 "Earthwork". N.T., 1/9/2006, at 101. As noted previously, this specification was an explicit contractual obligation of Imperial, and therefore could possibly form the basis of a finding of breach of contract. However, RCMI did not develop this argument on appeal. RCMI failed to identify any evidence capable of establishing that any subsoil deficiency caused the inadequacies cited by Southern Lehigh School District in withholding payment to RCMI. Accordingly, this issue is waived. *See Slappo v. J's Development Associates, Inc.,* 791 A.2d 409, 418–419 (Pa.Super.2002) (undeveloped claims are waived).

**3.** We note that RCMI's weight of the evidence claim was presented to the trial court via RCMI's post-trial motion, filed July 7, 2006.

evidence and that new process was [or was not] dictated by the interests of justice."

*Armbruster v. Horowitz,* 572 Pa. 1, 10, 813 A.2d 698, 703 (2002), *quoting Commonwealth v. Brown,* 538 Pa. 410, 436, 648 A.2d 1177, 1189–1190 (1994). The *Armbruster* Court continued in its discussion of this rigid standard: "[a]ccordingly, where the reasons for the trial court's granting or denying a new trial appear in the record, this Court has held that only a palpable abuse of discretion will warrant upsetting that decision on appeal." *Id.* (citation omitted). *See also Makozy v. Makozy,* 874 A.2d 1160, 1167 (Pa.Super.2005), *appeal denied,* 586 Pa. 740, 891 A.2d 733 (2005). As recently explained by Judge John L. Musmanno in *Angelopoulos v. Lazarus PA Inc.,* 884 A.2d 255, 259 (Pa.Super.2005), appeal denied, 587 Pa. 680, 897 A.2d 449 (2006), the verdict must be so contrary to the evidence as to "shock one's sense of justice," and not merely that the judge would have reached a different conclusion.

¶ 21 Furthermore, our Court has repeatedly held that

[t]he decision whether to grant a new trial on weight of the evidence grounds rests within the discretion of the trial court and that decision will not be disturbed absent an abuse of discretion. An abuse of discretion occurs when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

*Womack v. Crowley,* 877 A.2d 1279, 1282–83 (Pa.Super.2005), *appeal denied,* 588 Pa. 751, 902 A.2d 1242 (2006).

¶ 22 We have already concluded that the evidence presented at trial was sufficient to sustain the verdict entered by the trial court. RCMI's argument on the weight issue consists of challenges to credibility determinations made by the trial court, as well as the inferences drawn by the trial court. Based upon our independent review of the entire record, we conclude that the trial court's credibility determinations do not constitute an abuse of discretion. Accordingly, RCMI's second issue on appeal merits no relief.

¶ 23 The final issue raised by RCMI is whether the trial court erred in awarding attorney's fees and penalty interest to Imperial pursuant to the Pennsylvania Prompt Payment Act[4] ("PPPA"). The PPPA was intended to protect contractors and subcontractors by providing guidelines for prompt payment in construction projects. *See R.W. Sidley, Inc. v. U.S. Fidelity & Guaranty Company,* 319 F.Supp.2d 554, 560 (W.D.Pa.2004). Under the PPPA, every subcontractor working on a project subject to the PPPA is entitled to a payment, according to the proportion of the subcontract completed, within 14 days whenever the relevant contractor receives a payment for progress on the project. 73 PA.STAT. § 507(c). However, the contractor is entitled to withhold such payment if it has a good faith claim for deficient performance by the subcontractor. 73 PA. STAT. § 511.

¶ 24 The PPPA also protects subcontractors from specious deficiency claims presented by contractors. If a contractor unreasonably withholds payment to the subcontractor, the contractor can be assessed interest on the payment. 73 PA. STAT. § 509. Furthermore, a contractor who has withheld payment in bad faith can be subjected to a 1% penalty. 73 PA.STAT. § 512.

¶ 25 RCMI relies upon our opinion in *Ruthrauff, Inc. v. Ravin, Inc.,* 914 A.2d

---

4. 73 PA. STAT. § 509.

880 (Pa.Super.2006), to support its contention that the trial court erred in awarding penalties and interest to Imperial. Specifically, RCMI urges us to consider whether or not the amount withheld from Imperial bore a "reasonable relation to the value of any claim held in good faith against whom the contractor or subcontractor is seeking to recover payment." 73 PA. STAT. § 512(a).

¶ 26 To evaluate whether the award of interest and penalties was made in error, we must first determine whether the record supports the trial court's finding that RCMI improperly withheld payment. We begin this discussion by noting that RCMI withheld the sum of $262,330.28 from Imperial as an offset to the issue under litigation. Joint Exhibit # 6. However, as RCMI stipulated at trial, Southern Lehigh School District only withheld $120,000.00 in payment from RCMI with respect to the soccer fields. Joint Exhibit # 7.

¶ 27 In *Ruthrauff*, we held that withholding is only proper where the amount withheld "bears a reasonable relation to the value of any claim held in good faith." *Ruthrauff*, 914 A.2d at 892. The trial court supported its decision to award penalties and interest to Imperial by correctly reasoning that the $262,330 withheld from Imperial did not bear a "reasonable relation" to the $120,000 claim in question. We can find no error in this conclusion, and therefore determine that the evidence supports the trial court's finding that the amount withheld was improper under the PPPA.

¶ 28 "While the mandatory language of section 512(b) requires an award of attorney's fees to a *substantially prevailing party*, the issue of whether any party to a lawsuit *substantially prevailed* is left to the trial court's discretion." *Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607, 610 (Pa.Super.2006), *appeal denied*,

591 Pa. 685, 917 A.2d 315 (2007) (emphasis added). In the case *sub judice*, the trial court initially ruled that the consideration of an award of attorney's fees was to be postponed until the completion of an evidentiary hearing. The trial court further noted that "there is no question about whether Plaintiff may be considered to have substantially prevailed on these facts." Trial Court Opinion, 6/29/06 at 24. The record fully supports the trial court's finding based on the undisputed fact that Imperial entered into this suit in order to recover unpaid monies.

¶ 29 Use of the word "shall" in section 512(b) can only be interpreted as a legislative mandate, and where the trial court has determined that one party is "substantially prevailing," the award of attorney's fees must follow. 73 PA. STAT. § 512(b) ("[T]he substantially prevailing party in any proceeding to recover any payment under this act *shall* be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.") (emphasis added).

¶ 30 Therefore, because we find no abuse of discretion in the trial court's finding that Imperial was the substantially prevailing party, RCMI's appeal of the award of attorney's fees is to no avail. Accordingly, we find Imperial was entitled to the award of attorney's fees, which amount shall be determined following an evidentiary hearing before the trial court.

¶ 31 Judgment affirmed. Jurisdiction relinquished.