# Mastercraft Woodworking Company v.
# Jim Lagana Plumbing & Heating Inc.

*Susan J. Wall,* for plaintiff.
*Maura Zajac McGuire,* for defendants.

LASH, *J.,* July 27, 2009—The matter before this court is the motion of defendants, Jim Lagana Plumbing & Heating Inc., and Lagana Construction Services (collectively Lagana defendants), for partial summary judgment. Lagana defendants challenge the second amended

complaint of plaintiff, Mastercraft Woodworking Company Inc., on three bases. First, they contend that Mastercraft cannot recover under Counts IV and IX alleging violations of the Contractor and Subcontractor Payment Act (CSPA), 73 P.S. §501 et seq., because the contract between the parties was for a public works project and therefore, the CSPA is inapplicable or preempted by the Pennsylvania Public Works Procurement Act (Procurement Code), 62 Pa.C.S. §3901 et seq. Secondly, they urge that Counts V and X, alleging claims under the Procurement Code, cannot be maintained because those counts first appear in the second amended complaint, which was not filed within the time set by the applicable statute of limitations. Finally, the request for attorney's fees set forth in Counts I, II, III, VI, VII, and VIII of the second amended complaint must be stricken because these counts raise common-law causes of action and there is no legal or contractual basis for recovery of attorney's fees. Argument was held on July 20, 2009. For reasons set forth herein, this court grants the motion, dismissing Counts IV, V, IX, and X of the second amended complaint, and striking the request for attorney's fees in Counts I, II, III, VI, VII and VIII.

According to Mastercraft's second amended complaint, Lagana defendants entered into a contract with the Bloomsburg Area School District to act as general contractor for "multi-prime public school renovation projects" for two elementary schools.[1] Lagana defendants then entered into two written contracts with Mastercraft, dated May 16, 2003, referred to as purchase order num-

---

1. Paragraph 8 of second amended complaint.

ber 42731 and purchase order number 42735,[2] providing that Mastercraft would perform subcontracting work on the projects. Under the contracts, Mastercraft would perform manufacture, fabrication, supply and installation of casework and tack board.

Mastercraft alleges that it satisfied its contractual obligations under both contracts, entitling it to full payment but has only received partial payment from Lagana defendants. Accordingly, on or about July 21, 2004, Mastercraft filed suit against Lagana defendants and Zurich North America Surety and Financial Claims claiming Lagana defendants were liable under several common-law counts of breach of contract, unjust enrichment, and quantum meruit, as well as violations of the CSPA.[3] Mastercraft sought damages under purchase order number 42731 in the amount of $143,102.95 and under purchase order number 42735 in the amount of $110,475.57.

On or about August 30, 2004, Mastercraft filed an amended complaint, alleging the same causes of action. The case then proceeded through the pleadings and discovery stages. In due course, on November 5, 2008, Lagana defendants filed their first motion for partial summary judgment. In response, counsel for Mastercraft requested and received consent from counsel for Lagana

2. Purchase order number 42731 was for work performed on the Bloomsburg Memorial Elementary School and purchase order number 42735 was for work performed on the Bloomsburg WW Evans Elementary School.

3. The claims against Zurich are for violations of the Public Works Contractors' Bond Law of 1967, 8 P.S. §191-202, matters which are not at issue in the within motion.

defendants to file a second amended complaint and in exchange, Lagana defendants withdrew their motion for partial summary judgment.

Mastercraft filed its second amended complaint on November 13, 2008. In addition to the counts previously pleaded, Mastercraft added two new counts, Counts V and X, alleging that Lagana defendants violated the Procurement Code. Under these amendments, Mastercraft now sought damages of $163,952.95, plus $23,160 in "additional damages, interest, penalties, costs of suit, counsel fees and expenses" for purchase order number 42731[4] and $139,475.57, plus $24,420 in "additional damages, interest, penalties, costs of suit, counsel fees and expenses" on purchase order number 42735.[5]

After pleadings were closed, Lagana defendants filed the within motion for partial summary judgment, raising, as stated, three issues. First, since the projects called for renovations of two elementary schools, the projects were "public works projects" and as such, the CSPA is inapplicable. According to Lagana defendants, the Procurement Act is the appropriate remedy on breach of contract claims involving public works projects, and preempts the CSPA on the within matter.

Secondly, Lagana defendants argue that the claims raised under the Procurement Code are "bad faith claims" and as such are subject to the two-year statute of limitations set forth in 42 Pa.C.S. §5524(7). Alternatively, Lagana defendants maintain that even if a four-year

---

4. Paragraph 85 of Mastercraft's second amended complaint.

5. Paragraph 122 of Mastercraft's second amended complaint.

statute of limitation applies, as urged by Mastercraft, that the cause of action accrued more than four years prior to the filing of the second amended complaint. Finally, Lagana defendants argue that Mastercraft failed to aver any material facts which, if proven, would establish bad faith.

The third issue is a challenge to Mastercraft's request for attorney's fees as damages on the breach of contract, unjust enrichment, and quantum meruit claims. Lagana defendants point out that the contract between the parties did not provide for attorney's fees in the event of a breach. Further, there is no statutory authority for imposition of attorney's fees under these circumstances.

In response, Mastercraft argues that the CSPA is applicable in cases involving contracts between a contractor and a subcontractor, irrespective of whether the project involves public works. Mastercraft also contends that the Procurement Code is not foreclosed by the applicable statute of limitations because a four-year statute applies, and the cause of action did not accrue until November 16, 2004. Prior to that time, Mastercraft could not be paid because of an outstanding issue involving liquidated damages with the school district, which was finally resolved on November 16, 2004 with the signing of a settlement agreement and release. Further, allegations of bad faith do not have to be pleaded to obtain relief under the Procurement Code. Regarding attorney's fees, Mastercraft points to the statutory provisions for attorney's fees under the CSPA and the Procurement Code as a basis for seeking attorney's fees under each of the counts of the second amended complaint.

In *Jones v. SEPTA,* 565 Pa. 211, 216, 772 A.2d 435, 438 (2001), the Supreme Court restated the standard for granting summary judgment:

"Summary judgment will be entered only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law. S*kipworth v. Lead Industries Association Inc.,* 547 Pa. 224, 230, 690 A.2d 169, 171 (1997). Summary judgment is proper in cases in which 'an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to a cause of action or defense in which a jury trial would require the issues be submitted to a jury.' Pa.R.C.P. 1035.2(2). We review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992)."

We address first the viability of Counts IV and IX of the second amended complaint, which requests recovery under the CSPA. As stated, Lagana defendants argue that both counts should be stricken because the CSPA is preempted by the Procurement Code and because, by its own terms, the CSPA is inapplicable in this case. In support, Lagana defendants cite the Northampton County case of *Hoffmeister v. Skepton Construction Inc. and United States Fidelity & Guaranty Company,* 55 Northampton Cty. Rep. 46 (2006) (Giordano, *J.*), a case which addresses the issue squarely and makes findings consistent with their position.

On the preemption issue, the Northampton County court found that while both Acts address similar concerns, the two Acts have conflicting provisions which cannot be reconciled. The CSPA is written in general terms, while the Procurement Code, which was enacted later, specifically addresses contracts involving public works projects. In determining that it would be improper to apply both statutes and that the Procurement Code is the appropriate remedy, the court stated:

"The court here concludes that these Acts cannot be reconciled such that both would apply to the instant matter. Both Acts regulate the realm of payments by a general contractor to a subcontractor. Both Acts provide for interest and penalties in the event of late payments. However, the Acts differ as to the acts triggering the penalty, inasmuch as the [Procurement Code] requires bad faith and arbitrary, or vexatious, withholding of payment. It is not reasonable that the General Assembly intended to regulate conduct with two different requirements for the same entitlement to a penalty for a contractor's late payment to a subcontractor. The General Assembly does not intend a result that is unreasonable. 1 Pa.C.S. §1922. Therefore, the court must conclude that the [Procurement Code], being the more specific statute, and enacted later in time than the CSPA, applies to the instant matter and not the CSPA, being the more general statute involved."

The court also ruled that in construction contract disputes, where the owner of the premises is a school district, the CSPA is not applicable because the Act can only be applied to matters where the work is being performed on

premises owned by a "corporation, partnership, business trust, other association, estate, trust foundation or a natural individual."[6]

In response, Mastercraft notes that the purpose of the CSPA is to provide prompt payment protection to contractors and subcontractors in construction contracts. *Imperial Excavating and Paving LLC v. Rizzetto Construction Management Inc.,* 935 A.2d 557 (Pa. Super. 2007). Accordingly, as the within dispute is between a contractor and a subcontractor and does not involve the owner; whether the owner is a government agency, such as a school district, is not germane. Imperial also involved a nonpayment dispute between a subcontractor and a contractor for work performed on a school project. In that case, the plaintiff subcontractor was permitted to recover under the CSPA.[7] See also, *Net Construction Inc. v. C & C Rehabilitation & Construction Inc.,* 256 F. Supp.2d 350 (E.D. Pa. 2003), involving a claim by a subcontractor against a contractor for payments owed on a public housing project.

Mastercraft also believes that a government agency does fall within the definition of "owner" under the CSPA, citing the federal case of *Scandale Associated*

6. In section 502 of the CSPA, "owner" is defined as a "person who has an interest in the real property that is improved and who ordered the improvement to be made." "Person" is defined as a corporation, partnership, business trust, other association, estate, trust foundation or a natural individual.

7. However, the Superior Court's opinion did not weigh in on the issue at bar, whether the CSPA can be applied to actions involving public works contracts, which would imply that this issue was not raised in that case.

*Builders & Engineers Ltd. v. Bell Justice Facilities Corp.,*
455 F. Supp.2d 271 (M.D. Pa. 2006). That case involved
work performed on a government owned prison camp.
The court ruled that the term "other association" was
ambiguous and the federal government could arguably
fall within the definition of owner/person.

In making our determination, we observe well-estab-
lished standards of statutory construction. "[S]tatutes or
parts of statutes that relate to the same persons or things
or to the same class of persons or things are to be con-
strued together, if possible . . . . Moreover, individual
provisions of a statute should not be read in the abstract,
but 'must be construed with a view to its place in the
entire legislative structure of the [statute].'" *Casiano v.
Casiano,* 815 A.2d 638, 642 (Pa. Super. 2002) (citation
omitted), *reargument denied, appeal denied,* 574 Pa. 745,
829 A.2d 1156 (2003).

Further, "[w]here the general provisions of one statute
conflict with the specific provisions of another statute,
the two statutes must be construed to give effect to both
unless the conflict is irreconcilable, in which case spe-
cific provisions govern general provisions as long as the
general provisions were not enacted after the specific
provisions and the General Assembly did not clearly
indicate that the general provisions be given priority over
the specific provisions." *Commonwealth v. Henderson,*
444 Pa. Super. 170, 186-87, 663 A.2d 728, 736 (1995).
(citations omitted)

The two statutes are similar, founded on the same
general purpose, to ensure prompt payment to contractors
and subcontractors for work performed on construction

contracts. For our purposes, the key distinction involves the availability of the CSPA to cases involving many different types of owners, in contrast to the Procurement Code, which is more specific in nature, limited to contracts entered into by a government agency.

Integral to our analysis is a comparison of the penalty and attorney's fee provisions in the respective statutes. Section 512 of the CSPA mandates a penalty of 1 percent per month of the amount wrongfully withheld once it is proven that the defendant failed to comply with the payment terms of the Act. Further, attorney's fees "shall be" awarded to the prevailing party.

Section 3935 of the Procurement Code, enacted subsequent to the CSPA, sets forth phraseology which mirrors much of section 512, it appearing that the General Assembly utilized section 512 as a template in drafting section 3935. However, there are several distinctions, evidencing a different legislative intent for section 3935. For one, the word "may" is substituted for the word "shall" regarding the authority of the tribunal to award penalties or attorney's fees. This evidences the clear intent that imposition of a penalty or award of attorney's fees under the Procurement Code is permissible, but not mandatory, in contrast to the CSPA, where no discretion is prescribed. Secondly, under the Procurement Code, before penalties or attorney's fees can be imposed, the tribunal must make a finding that the nonprevailing party acted "in bad faith." No such requirement appears in the CSPA.

The only reason we can discern for the difference in language is that the General Assembly did not intend to

mandate penalties and attorney's fees against a governmental agency, as those additional damages would ultimately be paid by taxpayers. That purpose is defeated if school districts or other governmental agencies could be sued under the CSPA.

We find that the CSPA and the Procurement Code are not irreconcilable, that they can and should be read together, furthering the legislative intent of both. When so considered, it is apparent that actions involving governmental construction contracts must be brought under the Procurement Code. This resolves the conflict between the penalty/attorney's fees subsections, protects taxpayers from being saddled with penalties and attorney's fees due to the recalcitrance of a governmental agency, except in cases where the tribunal, at its discretion, deems it warranted, and provides cohesion and completeness to both statutes. Accordingly, we rule that Counts IV and IX of Mastercraft's second complaint shall be dismissed.

Turning then to the Procurement Code issues, we initially reject Mastercraft's contention that bad faith is not an element of Counts V and X of its second amended complaint. Section 3935 of the Procurement Code states:

"(a) Penalty.—If arbitration or a claim with the Board of Claims or a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that the government agency, contractor or subcontractor has failed to comply with the payment terms of this subchapter, the arbitrator, the Board of Claims or the court may award, in addition to all other damages due, a penalty equal to 1 percent per month

of the amount that was withheld in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

"(b) Attorney fees.——Notwithstanding any agreement to the contrary, the prevailing party in any proceeding to recover any payment under this subchapter may be awarded a reasonable attorney fee in an amount to be determined by the Board of Claims, court or arbitrator, together with expenses, if it is determined that the government agency, contractor or subcontractor acted in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious."

While, arguably, relief under the Procurement Code could be limited to compensation and interest, the primary distinction between relief available under the Procurement Code and that of a breach of contract action are the penalty and attorney's fees afforded to successful claimants when bad faith is established. These additional remedies appear to be the basis for Mastercraft filing Counts V and X.

In essence, Lagana defendants' argument is that Counts V and X are "bad faith claims," statutory in nature, separate and distinct from the underlying contractual claims. As such, the claims would be considered torts, subject to the two-year statute of limitations set forth in 42 Pa.C.S. §5524(7).

In support, they rely on the analysis provided by the Pennsylvania Supreme Court in *Ash v. Continental Insurance Company*, 593 Pa. 523, 932 A.2d 877 (2007). In *Ash*, plaintiffs/appellants filed a complaint against defendant/appellee insurance company alleging a breach of contract for failing to pay a claim for fire damage to real property owned by plaintiffs/appellants. During the pendency of the action, plaintiffs/appellants filed a motion for leave to amend their complaint to include a claim against defendant/appellee under the Pennsylvania Bad Faith Insurance Statute, 42 Pa.C.S. §8371. This motion was denied by the trial court as untimely, based on its determination that the section 8371 bad faith claim is a "statutorily created tort action and is therefore subject to the two-year statute of limitations."

Both the Superior Court and the Supreme Court affirmed the decision of the trial court. In its affirmance, the Supreme Court provided a thorough analysis on the treatment of bad faith actions. Among other things, the Supreme Court found that punitive damages are typically only awarded in tort actions and that bad faith actions are generally based upon a "standard of conduct imposed by society which is consistent with a tort claim," citing *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981).

The Supreme Court noted that under common law, parties to a contract were required to act in good faith. A breach of that duty constituted a basis for a breach of contract action. However, the remedy under that form of action was limited to damages permitted under the con-

tract, *i.e.,* compensatory damages. There was no separate tort remedy for a breach of an implied covenant of good faith and fair dealing. *D'Ambrosio, supra.*

Apparently in response to the holding of *D'Ambrosio,* the General Assembly enacted section 8371, specifically to provide a tort cause of action for bad faith. The enactment of section 8371 thereby created a remedy not previously established in Pennsylvania, and one which was separate and distinct from the contract action already available to the aggrieved party. Further, the court found that the enactment of section 8371 was in furtherance of public policy concerning the regulation of insurance carriers. As such, the duty under section 8371 is "one imposed by law as a matter of social policy, rather than one imposed by mutual consensus, and an action to recover damages for breach of that duty derives primarily from the law of torts." *Ash, supra* at 535, 932 A.2d at 885. Accordingly, the Supreme Court found that an action under section 8371 is an action in tort subject to the two-year statute of limitations.

We perceive several distinctions between the provisions of section 8371 and the penalty provision of the Procurement Code. First, a bad faith action under section 8371 is not related to nor dependent on the underlying contract claim, but is recognized as separate and distinct. *Adamski v. Allstate Insurance Company,* 738 A.2d 1033, (Pa. Super. 1999), *appeal denied,* 563 Pa. 655, 759 A.2d 381 (2000). In contrast, section 3935 of the Procurement Code requires an initial finding of a breach in the nature of noncompliance with payment terms before bad faith can be found or a penalty assessed. Similarly, attorney's

fees are only awarded after a party first prevails on the underlying action.

Secondly, section 8371 does not provide any limitation on the amount of punitive damages. This is in recognition that the award under section 8371 is punitive, to punish egregious behavior, not to award additional compensation. The Procurement Code, however, limits the penalty to 1 percent per month of the amount withheld in bad faith, plus attorney's fees. As such, the Procurement Code appears to contemplate providing additional compensation in the nature of recoupment of attorney's fees and the loss of the use of funds, and is not applied to simply impose punishment.

Third, the Procurement Code focuses on redress to an aggrieved party, not the furtherance of social policy by providing a deterrent to entities with financial or positional advantage from engaging in improper conduct or delays.

For these reasons, we find that the rationale applied by the Supreme Court in *Ash* cannot be extended to cases under the Procurement Code. We also find that the penalty and attorney's fees provisions of the Procurement Code do not provide a separate claim under tort, but allow additional damages on a contractual claim initiated under its provisions. Accordingly, the statute of limitations for a breach of contract, four years, under 42 Pa.C.S. §5525, applies to Counts V and X of the second amended complaint.

That being said, we must nevertheless dismiss Counts V and X as untimely, based on the facts. Counts V and X are first raised in the second amended complaint, filed

on November 13, 2008. Mastercraft alleges that the cause of action did not accrue until November 16, 2004, because of an ongoing dispute between Lagana defendants and the school district, with corresponding promises by Lagana defendants to promise to pay the debt. Mastercraft argues that the promise to pay the debt tolled the statute, based upon the holding of *S. T. Hudson Engineers v. Camden Hotel Development Associates,* 747 A.2d 931, 934 (Pa. Super. 2000).

In its brief, Mastercraft sets forth:

"[Lagana defendants] correctly points out that Mastercraft first notified it of problems with partial payments, as well as other difficulties beginning in late 2003. In response to Mastercraft's request for payment and concerns, [Lagana defendants] asserted that payments were in jeopardy as a result of threats of liquidated damage claims from the school district and continued to promise payment once the liquidated damages were resolved. This is illustrated in several letters from James Lagana and James Facciolla . . . . In particular, in Mr. Facciolla's February 5 letter, he notes that payment will be held until resolution of the noted issues. Additionally, Mr. Lagana's February 11 letter specifically states that charges cannot be discussed in light of the liquidated damages claim of the school district . . . . The liquidated damages issues with the school district were not resolved until November 16, 2004, with the signing of a settlement agreement and release." [8]

---

8. Plaintiff, Mastercraft Woodworking Company Inc.'s, brief in opposition to defendants, Jim Lagana Plumbing & Heating Inc., and Lagana Construction Services' motion for partial summary judgment, pp. 12-13.

The aforesaid statements in Mastercraft's brief belie the fact that it initially filed suit against Lagana defendants on July 21, 2004. Although its claims under the Procurement Code were not included within the initial complaint, the complaint specifically sets forth that monies owed under purchase order number 42731 and purchase order number 42735 were due and owing to Mastercraft and that Lagana defendants' failure to pay same established a breach of contract. These factual averments, would qualify as the foundation for an action under the Procurement Code, were properly verified by Mastercraft's president, and constitute a statement that Mastercraft believed its claims were ripe to proceed. Mastercraft cannot now assert that its causes of action under the Procurement Code did not accrue until November 16, 2004. For this reason, Counts V and X of the complaint shall be dismissed.

Likewise, the claims for attorney's fees in Counts I, II, III, VI, VII, and VIII of the second amended complaint must be stricken. Lagana defendants correctly point out that the contract between the parties does not provide that a breaching party be required to pay attorney's fees. As there is no statutory or common-law authority to permit an award of attorney's fees under these facts, the court shall strike the request for attorney's fees contained within these counts.

We enter the following order:

## ORDER

And now, July 27, 2009, upon consideration of the motion for partial summary judgment of defendants, Jim

Lagana Plumbing & Heating Inc. and Lagana Construction Services, response thereto, briefs filed by the parties and after argument held, the motion is granted. Counts IV, V, IX, and X of the second amended complaint are dismissed. The request for attorney's fees set forth in Counts I, II, III, VI, VII, and VIII are stricken.