[J-23-2015]
IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | | |
|---|---|---|
| CLIPPER PIPE & SERVICE, INC., | : | No. 59 EAP 2014 |
| | : | |
| Appellee | : | Appeal from the Order granting Petition |
| | : | for Certification of Question of Law |
| v. | : | |
| | : | |
| THE OHIO CASUALTY INSURANCE CO.; | : | |
| CONTRACTING SYSTEMS, INC. II, | : | |
| | : | |
| Appellant | : | ARGUED: April 7, 2015 |

***OPINION***

**MR. CHIEF JUSTICE SAYLOR**          **DECIDED: JUNE 15, 2015**

We accepted certification from the United States Court of Appeals for the Third Circuit to determine whether a Pennsylvania statute governing payments to contractors and subcontractors applies in the context of a public works project.

The subject statute is the Contractor and Subcontractor Payment Act,[1] which confirms and establishes certain rights and duties among "owners," "contractors," and "subcontractors" with respect to "construction contracts." 73 P.S. §502. Within the enactment, "owner" is a pivotal term, given its centrality and pervasive appearance. For instance, "contractor" is defined as "[a] person authorized or engaged by an *owner* to improve real property." *Id.* (emphasis added).

---

[1] Act of Feb. 17, 1994, P.L. 73, No. 7 (as amended, 73 P.S. §§501-516) ("CASPA").

Under CASPA, "owner" is defined, in pertinent part, as "[a] *person* who has an interest in the real property that is improved and who ordered the improvement to be made." *Id.* §502 (emphasis added). "Person," in turn, is defined as "[a] corporation, partnership, business trust, *other association*, estate, trust foundation or a natural individual." *Id.* (emphasis added).

In 2010, the United States Department of the Navy entered into an agreement with Contracting Systems, Inc. II ("CSI"), per which the latter served as the general contractor for the construction of an addition to, and renovations of, the Navy/Marine Corps Reserve Training Center in the Lehigh Valley. CSI, in turn, subcontracted with Appellee, Clipper Pipe & Service, Inc. ("Clipper"), for the performance of mechanical and heating, ventilation, and air conditioning work.

Subsequently, Clipper filed suit against CSI and its surety, the Ohio Casualty Insurance Company (collectively "Appellants"), in the United States District Court for the Eastern District of Pennsylvania, asserting that CSI had failed to pay approximately $150,000 to Clipper, per the terms of their agreement. Among other claims, Clipper advanced one under CASPA.

Appellants moved for summary judgment, arguing that CASPA does not apply to public works projects, because a governmental entity does not qualify as an "owner" under the statutory definition, as such an entity is neither a "person" nor an "other association." 73 P.S. §502. Appellants acknowledged that a federal district court had predicted that Pennsylvania courts would find that a governmental entity may be an owner for purposes of CASPA. *See Scandale Associated Builders & Eng'rs, Ltd. v. Bell Justice Facilities Corp.*, 455 F. Supp. 2d 271, 281 (M.D. Pa. 2006). They highlighted, however, the inconsistency of such prediction with several actual decisions issued by Pennsylvania state courts, albeit from the common pleas level. *See, e.g., Hoffmeister v.*

*Skepton Constr., Inc.*, 55 Northampton Cnty. Rep. 46, 48 (2006) (reasoning that CASPA did not apply to a Commonwealth public works project, because "a 'person' is specifically defined in [CASPA] with a limited list of entities that does not include any agency of state or local government"), *aff'd per curiam*, 943 A.2d 327 (Pa. Super. 2007). Along these lines, Appellants noted that Pennsylvania courts had also considered CASPA in concert with Subchapter D of Chapter 39 of the Commonwealth Procurement Code,[2] commonly denominated the "Prompt Pay Act," another statutory regime directed at promoting prompt payment to contractors and subcontractors. *See, e.g.*, *Mastercraft Woodworking Co. v. Jim Lagana Plumbing & Heating Inc.*, 9 Pa. D. & C. 5th 251, 259-61 (C.P. Berks 2009). In this regard, Appellants explained, those courts had concluded that the Prompt Pay Act – and not CASPA – addresses public works projects. *See, e.g.*, *id.*

The federal district court denied relief on Appellants' motion. Among other aspects of its rationale, the court followed *Scandale*'s reasoning that a governmental entity may be an "owner" under CASPA, since the statutory definition of "person" does not exclude the federal government, and the purpose of CASPA is to protect contracting parties.

Clipper prevailed at an ensuing jury trial, and the district court awarded interest, penalties, and counsel fees, such as are made available by CASPA. *See* 73 P.S. §§505(d), 512. Appellants lodged an appeal in the United States Court of Appeals for the Third Circuit. Per this Court's internal operating procedures, the federal appeals court subsequently applied for certification of a question of law, namely, "does [CASPA] apply to a project where the owner is a governmental entity, such as the federal

---

[2] Act of May 15, 1998, P.L. 358, No. 57 §§3931-3939 (as amended, 62 Pa.C.S. §§3931-3939).

government in this case?" Petition for Certification in *Clipper Pipe & Service, Inc. v. Ohio Cas. Ins. Co.*, No. 14-1716 (3d Cir. Oct. 24, 2014), at 8.

Presently, Appellants maintain that governmental bodies cannot be "owners" for purposes of CASPA, because the word "government" does not appear in the definition, and it is the Prompt Pay Act, not CASPA, which expressly governs public works projects. To the degree this is not plain from the face of CASPA, Appellants invoke principles of statutory construction. For example, Appellants urge that, under the doctrine of *ejusdem generis*, the phrase "other association," as used in the definition of "person" (and, derivatively, "owner") should take its meaning from the words which precede it, *i.e.*, "[a] corporation, partnership, [or] business trust," 73 P.S. §502. *Accord* 1 Pa.C.S. §1903(b) ("General words shall be construed to take their meanings and be restricted by preceding particular words.").

Additionally, Appellants note that the term "association," as utilized in statutes enacted prior to December 7, 1994, refers to "any form of unincorporated enterprise owned by two or more persons other than a partnership or limited partnership." 1 Pa.C.S. §1991. According to Appellants, this definition is obviously directed to non-public entities. Finally, Appellants believe that it would be untenable for both CASPA and the Prompt Pay Act to apply simultaneously to a construction project, given that there are substantial differences in: the timing for provision of required notices, *compare* 73 P.S. §511, *with* 62 Pa.C.S. §3934; the rate of interest on delayed payments, *compare* 73 P.S. §505, *with* 62 Pa.C.S. §3932(c); and the burden of proof associated with penalty and attorneys' fee awards, *compare* 73 P.S. §512, *with* 62 Pa.C.S. §3935. *Accord, e.g.*, *E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.*, 111 A.3d 220, 232 (Pa. Cmwlth. 2015) (concluding, based on the differences between CASPA and the Prompt Pay Act, that the latter, "not CASPA, governs

construction contracts between a government agency . . . and a contractor"); *Hoffmeister*, 55 Northampton Cnty. Rep. at 47 ("It is not reasonable that the General Assembly intended to regulate conduct with two different requirements for the same entitlement to a penalty for a contractor's late payment to a subcontractor.").[3]

Finally, Appellants contend that application of CASPA to federal public works projects would contravene the principle of federal supremacy, per which states may not regulate the federal government. *See, e.g.*, *North Dakota v. United States*, 495 U.S. 423, 434, 110 S. Ct. 1986, 1994 (1990) ("State law may run afoul of the Supremacy Clause in two distinct ways: The law may regulate the [federal] Government directly or discriminate against it, . . . or it may conflict with an affirmative command of Congress." (citing, *inter alia*, *M'Culloch v. Maryland*, 17 U.S. 316 (1819))).

Clipper, on the other hand, does not accept that the identity of the owner is fundamental to the application of CASPA. *See, e.g.*, Brief for Appellee at 4 ("The fact that a governmental entity is an owner is irrelevant where the contract at issue does not include a governmental entity as a party."). Along these lines, Clipper references *Imperial Excavating & Paving, LLC v. Rizzetto Construction Management, Inc.*, 935 A.2d 557 (Pa. Super. 2007), as a decision which applied the terms of CASPA in determining the respective rights of a contractor and subcontractor on a public project. To the degree that identity is relevant to the status of an "owner" under CASPA, Clipper maintains that the federal government is both a "person" and an "other association," since "the federal government is nothing more than an association of its citizens." Brief

---

[3] In this regard, Appellants also reference the principle of statutory construction requiring that specific provisions control over general ones. *See* Brief for Appellants at 26 ("Because the Prompt Pay Act is the more specific statute, and was enacted after the more general CASPA, the Rules of Statutory Construction require that the more specific language in the Prompt Pay Act prevail over the general language of 'other association' in CASPA." (relying upon 1 Pa.C.S. §1933)).

for Appellee at 5; *accord Scandale*, 455 F. Supp. 2d at 281.  According to Clipper, this approach is consistent with the policy of liberal construction to be implemented in discerning the meaning of ambiguous remedial statutes.  *See* 1 Pa.C.S. §1928(c).

Clipper also stresses the salient policy underlying CASPA -- in terms of protecting contractors and subcontractors and encouraging fair dealing among the parties to a construction contract – and observes that such salutary aims should not be confined to private projects.  *See, e.g.*, Brief for Appellee at 16 ("The manifest intention of the General Assembly was to protect subcontractors from the exact type of conduct [in which] a jury determined CSI engaged.").  Furthermore, while recognizing that application of CASPA to claims against the federal government might raise supremacy concerns, Clipper suggests that such concerns are alleviated since such application would be preempted by the federal Prompt Pay Act, 31 U.S.C. §§3901-3907.  Clipper does not find the Commonwealth-level Prompt Pay Act relevant, since it is addressed to contracts involving state and local governmental units, *see* 62 Pa.C.S. §3902, not the federal government.

Finally, Clipper develops that, pursuant to recent amendments to Section 102 of the Associations Code,[4] the term "association" expressly excludes governmental entities.  *See* Act of Oct. 22, 2014, P.L. 2640, No. 172 (amending, *inter alia*, 15 Pa.C.S. §102).  It is Clipper's position that such modification bolsters the conclusion that the Legislature did not previously intend to exclude governmental bodies from CASPA's reach.

Upon review, we agree with Appellants' position that CASPA does not apply in the context of public works projects.  In the first instance, we find Clipper's and the federal district courts' proposition that the General Assembly may have intended the

---

[4] Act of Dec. 21, 1988, P.L. 1444, No. 177 (as amended, 15 Pa.C.S. §§101-9507).

term "association" to encompass governments or governmental units to be unconvincing. Moreover, the United States and its Department of the Navy are dissimilar to a "corporation," "partnership" "business trust," "estate," "trust foundation," and "natural individual," among which the term "association" appears. *Cf. DEP v. Cumberland Coal Res., LP*, ___ Pa. ___, ___, 102 A.3d 962, 976 (2014) (explaining that, per the doctrine of *ejusdem generis*, catchall phrases "should not be construed in their widest context").

Even if this were not the case, another relevant rule of statutory construction prescribes that statutes in derogation of sovereignty should be construed strictly in favor of the sovereign. *See, e.g., Meyer v. Cmty. Coll. of Beaver Cnty.*, ___ Pa. ___, ___, 93 A.3d 806, 814 (2014). *See generally* 3 SUTHERLAND STATUTORY CONSTRUCTION §62:1 (7th ed. 2015) ("Statutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances."). This approach derives, in part, from the immunity accorded to the government at common law (and presently reaffirmed by statute, *see infra* note 6). *See generally* 3 SUTHERLAND STATUTORY CONSTRUCTION §62:1 ("[T]he rule exempting the sovereign from the operation of the general provisions of a statute is premised on a policy of preserving for the public the efficient, unimpaired functioning of government.").[5] It is also grounded on the assumption that non-specific

---

[5] *Accord Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780, 120 S. Ct. 1858, 1866 (2000) ("We must apply to this text our longstanding interpretive presumption that 'person' does not include the sovereign." (citations omitted)); *United States v. Bd. of Fin. & Revenue*, 369 Pa. 386, 396-97, 85 A.2d 156, 163 (1951) ("[T]he word person is never generally construed to include a sovereign whether the United States or a State." (internal citations omitted)).

statutes are most often directed to the affairs of the citizenry. *See id.* ("There is a further basis for the rule in that the purpose of most legislation is to govern, *i.e.*, to direct the application of the power of government to arrange the affairs of people who are subject to it. For this reason most statutes are intended and understood to apply to members of the public instead of the government itself."). Per the application of this principle, the federal government is not an "association" or a "person" or, derivatively, an "owner" for purposes of CASPA.[6]

---

[6] In the *Meyer* decision, cited previously, the relevant principle of narrow construction was applied upon review of a legislative enactment which predated this Court's decision to abrogate common-law sovereign immunity. *See Mayle v. Pa. Dep't of Highways*, 479 Pa. 384, 406, 388 A.2d 709, 720 (1978). Thus, strictly speaking at least, it remains an issue of first impression whether the precept should be extended into the context of a post-abrogation statute such as CASPA. Accordingly, we pause to explain why continued application is appropriate.

Very soon after the issuance of *Mayle*, the General Assembly reaffirmed and reinstated the doctrine of sovereign immunity through a legislative enactment. *See* 1 Pa.C.S. §2310. Per the statutory regime, the Commonwealth "shall continue to enjoy sovereign immunity . . . and remain immune from suit except as the General Assembly shall *specifically* waive the immunity." *Id.* (emphasis added). Notably, this Court already has implemented this plain directive to maintain the traditional strict construction of statutes in derogation of sovereignty. *See, e.g.*, *Pyeritz v. PSP*, 613 Pa. 80, 94, 32 A.3d 687, 696 (2011) ("The legislature's intent in enacting the Sovereign Immunity Act was to shield government from liability except as provided for in the statute itself, and *we must apply a rule of strict construction in interpreting the exceptions*." (emphasis added)).

Furthermore, although Appellants have not specifically referenced the strict-construction precept in their arguments, application of the principle is entirely consistent with Appellants' position that general statutory terms such as "person" and "association" should not be construed to encompass the Commonwealth, at least in the absence of some specific evidence of a legislative intention supporting such an expansive construction. Moreover, we believe that our present reference to the relevant principle of narrow construction is salutary in terms of affording broader guidance, particularly given that several federal district courts have construed general terms to encompass the Commonwealth in a context in which there is no specific evidence that the Legislature intended such a construction. *See, e.g.*, *Scandale*, 455 F. Supp. 2d at 281.

We recognize that the government is not directly involved in the present dispute between CSI, a contractor in the generic sense, and its subcontractor, Clipper. Nevertheless, our analysis circles back to the centrality of the concept of an "owner" to CASPA. Where there is no "owner" for purposes of CASPA -- because a "person" did not commission the construction in the first instance, 73 P.S. §502 (defining "owner" in terms of a *person* with an interest in real estate) -- there also can be no "contractor" under the statute, given that a "contractor" must be engaged by an "owner." *Id.* Whether by intention or oversight, the Legislature simply did not design CASPA to apply independently to subcontracts in scenarios in which the foundational contract resides outside its boundaries. Thus, although we do not discount that the policy of CASPA would seem to be served by applying it to the present circumstances, such application is too disharmonious with the statutory mechanics to support the extension.[7]

In terms of the soon-to-be-effective amendment to the Associations Code, which will indicate expressly that the term "association" does not encompass governmental units, we differ with Clipper's assumption that this necessarily reflects changed legislative intent. Other jurisdictions recognize that the purpose of amendments, in fact, may be to clarify what the governing legislature body intended from the outset.[8] Indeed,

---

[7] In a similar vein, while recognizing the remedial nature of CASPA, we conclude that the policy of liberal construction has its limits as well.

[8] Along these lines, the Michigan Supreme Court has explained that the principle suggested by Clipper:

> is a rule for construction of the amendment when ... the meaning of the statute before amendment is settled and the question presented is the meaning and effect to be given the amendment. *The rule is not applied in reverse for the purpose of determining the meaning of the statute before amendment by presuming that it must have been something different than that which is the clear intent of the statute after*

(…continued)

interpretive judicial decisions, such as the federal district courts' opinions pertinent to this case, are sometimes the impetus for such clarification.

In summary, we conclude that CASPA does not apply to a construction project where the owner is a governmental entity.

The matter is returned to the Third Circuit.


Messrs. Justice Eakin and Baer, Madame Justice Todd and Mr. Justice Stevens join the opinion.

---

(continued…)

> *the amendment.* ... While in many and perhaps most instances it undoubtedly is the legislative intent, in enacting an amendment, to change existing law, there are, as undoubtedly, other instances, particularly if uncertainty exists as to the meaning of a statute, when amendments are adopted for the purpose of making plain what the legislative intent had been all along from the time of the statute's original enactment.

*In re Detroit Edison Co.*, 87 N.W.2d 126, 130 (Mich. 1957) (emphasis added); *accord Colonial Pipeline Co. v. Neill*, 251 S.E.2d 457, 461 (N.C. 1979) ("In construing a statute with reference to an amendment, it is presumed that the Legislature intended either (1) to change the substance of the original act or (2) to clarify the meaning of it.").